**BROTHERHOOD OF LOCOMOTIVE ENGINEERS, Appellant,**

v.

**DENVER & RIO GRANDE WESTERN RAILROAD CO. et al., Appellees.**

No. 176–68.

United States Court of Appeals Tenth Circuit.

June 19, 1969.

Harold A. Ross, Cleveland, Ohio (Philip Hornbein, Jr., Denver, Colo., with him on brief) for appellant.

Harold C. Heiss, Cleveland, Ohio (Alden T. Hill, Fort Collins, Colo., with him on brief) for appellees.

Before MURRAH, Chief Judge, and LEWIS and HOLLOWAY, Circuit Judges.

MURRAH, Chief Judge.

This appeal involves the proper construction of a 1966 amendment to Section 3, Second, of the Railway Labor Act, 45 U.S.C. § 153, Second[1] (Public Law 89–456, 80 Stat. 208). And the specific question is, as stated by the trial judge, "Whether one union [The Brotherhood of Locomotive Firemen & Enginemen] can utilize the special board of adjustment machinery of [the amendment] to resolve with the railroad the grievance claims of its members when these claims arose out of the employment in a craft for which another union [The Brotherhood of Locomotive Engineers] is the exclusive collective bargaining agent under the Act and involve the interpretation and application of the collective bargaining agreement executed by such other union." 290 F.Supp. 612, 618 (D.Colo.1968).

The Firemen's Union is the collective bargaining representative for the locomotive firemen on the Denver & Rio Grande Western Railroad Company. The Engineers' Union is the certified bargaining representative for the locomotive engineers on the same line. Agreeably to their respective collective bargaining contracts firemen are sometimes promoted to engineers and engineers demoted to firemen. Some of these people who shuttle between the two crafts are members of both unions but not necessarily so.

The Firemen's Union submitted several grievance claims on behalf of its members to the Railroad for settlement and prosecuted them to the "chief oper-

---

1. In pertinent part the 1966 amendment reads as follows:

"If written request is made upon any individual carrier by the *representative of any craft or class* of employees of such carrier for the establishment of a special board of adjustment to resolve disputes otherwise referable to the Adjustment Board [N.R.A.B.], or any dispute which has been pending before the Adjustment Board for twelve months * * *, or if any carrier makes such a request upon any such representative, the carrier or the representative upon whom such request is made shall join in an agreement establishing such a board * * *. Such board shall consist of one person desinated by the carrier and one person designated by the representative of the employes. If such carrier or such representative fails to agree upon the establishment of such a board as provided herein, or to exercise its rights to designate a member of the board, the carrier or representative making the request for the establishment of the special board may request the Mediation Board to designate a member of the special board on behalf of the carrier or representative upon whom such request was made. Upon receipt of a request for such designation the Mediation Board [N.M.B.] shall promptly make such designation and shall select an individual associated in interest with the carrier or representative he is to represent, who, with the member appointed by the carrier or representative requesting the establishment of the special board, shall constitute the board. * * * If [the members so designated] are unable to agree such matters shall be determined by a neutral member of the board selected or appointed [by the N.M. B. on request of either member of the board] * * *. Compliance with such awards shall be enforceable by proceedings in the United States district courts in the same manner and subject to the same provisions that apply to proceedings for enforcement of compliance with awards of the Adjustment Board."

ating officer of the carrier designated to handle such disputes." 45 U.S.C. § 153, First (i). Upon the Railroad's rejection of the claims, the Firemen's Union requested the creation of a special adjustment board in accordance with § 153, Second, to arbitrate the claims. The Railroad refused to agree to the creation of the board for the arbitration of six of the claims on the ground that they admittedly arose while the firemen were performing duties of an engineer, hence, subject to the engineers' contract. Following the statutory procedure, the Firemen's Union then requested the National Mediation Board to appoint a party "associated in interest with the carrier", § 153, Second, who, with the Firemen's Union representative, would constitute the special adjustment board. See 29 C.F.R. § 1207.1–1207.4. Apparently the appointed carrier representative and the Firemen's Union representative were unable to agree; whereupon, pursuant to the statute, the N.M.B. appointed a third member referred to as a "procedural neutral" to resolve the jurisdictional dispute.

After the hearings before the special adjustment board, as thus constituted, wherein the Engineers' Union was heard, the Firemen's Union representative and the procedural neutral entered into a statutory agreement, assuming jurisdiction of the six firemen-engineer claims, according to the "established interpretation" of the Engineers' contract by the Engineers' Union.[2]

Before hearings on the merits, the Engineers' Union brought this action seeking in essence a declaration that the Firemen's Union, Railroad, and National Mediation Board are legally without authority to convene a special adjustment board to interpret and apply the Engineers' collective bargaining contract to these firemen-engineer disputes, and for an injunction against the exercise of the assumed subject matter jurisdiction. On a motion to dismiss, Judge Arraj first sustained his own jurisdiction to review, Brotherhood of R.R. Trainmen v. Denver & R.G.W.R., 370 F.2d 833 (10th Cir. 1966) cert. den. 386 U.S. 1018, 87 S.Ct. 1375, 18 L.Ed.2d 456 (1967), and cf. Garvey v. Freeman, 397 F.2d 600 (10th Cir. 1968), then confirmed subject matter jurisdiction of the special adjustment board. He accordingly dismissed the Engineers' Union's action for failure to state a claim for injunctive relief.

The Railroad and the N.M.B. chose to take no part in the appeal, leaving the Firemen's Union as the only answering Appellee. No question of judicial review is raised on appeal. But we should not exercise our injunctive powers to interfere with the establishment of the special board and the exercise of its jurisdiction unless it is made to appear that the invocation of the board was clearly unauthorized and that the exercise of subject matter jurisdiction would leave the Appellant without remedy. Transportation-Communication Emp. Union v. U. P. R. Co., 385 U.S. 157, 164, 87 S.Ct. 369, 17 L.Ed.2d 264 (1966); Whitehouse v. Illinois Cent. R. Co., 349 U.S. 366, 75 S.Ct. 845, 99 L.Ed. 1155 (1955), and cf. Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 51, 58 S.Ct. 459, 82 L.Ed. 638 (1938). Reviewing the trial court's declination to interfere with the administrative processes in this context, we affirm its judgment.

Under the Railway Labor Act an individual may prosecute his griev-

---

2. The jurisdictional agreement read: "If any claim or grievance involves an employee while engaged in work subject to any rule contained in an agreement other than that between [the Firemen's Union] and the Carrier, such claim or grievance will be disposed of under the recognized interpretation placed upon the schedule rule involved by the officials of the Company and the General Committee of the organization making that agreement, and the Board shall forthwith make written request for the delivery to it of such interpretation within thirty days. In the absence of such *established interpretation* placed upon the schedule rule involved, the award issued in resolving the claim or grievance shall not constitute a *precedent as to the interpretation or application of such schedule rule.*"

ance before the National Railroad Adjustment Board pro se or by any designated representative, as he chooses. See Elgin, J. & E. R. Co. v. Burley, 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945) adhered to on rehearing, 327 U.S. 661, 66 S.Ct. 721, 90 L.Ed. 928 (1946) and McElroy v. Terminal Railroad Association of St. Louis, 392 F.2d 966 (7th Cir. 1968) cert. den. 393 U.S. 1015, 89 S.Ct. 611, 21 L.Ed.2d 559 (1969). Relying on the legislative history of the 1966 amendment, however, the trial court concluded, rightly we think, that an individual could not invoke the provisions of the amendment to convene a special adjustment board to handle his grievance, but rather Congress intended to limit the availability of this machinery to a union representative. The question was thus narrowed to whether this union representative must be the collective bargaining representative. Squarely facing this issue as the heart of the lawsuit, the trial court concluded that neither the language of the amendment nor the legislative history warranted restricting the availability of this machinery to the collective bargaining representative alone but rather that the statutory words "representative of any craft or class" meant any otherwise qualified union representative. We agree, and can add little, except to make further reference to the legislative history of the 1966 amendment in so far as it bears on the interpretation of these critical words.

The declared purpose of the 1966 amendment was to relieve the congestion in the dockets of at least two of the four divisions of the N.R.A.B. House Report No. 1114, 89th Congress, First Session p. 3, and Senate Report No. 1201, 89th Congress, Second Session, 1966 U.S. Code Congressional and Administrative News, pp. 2285–2286. To achieve this purpose the special adjustment board machinery was established as a mandatory arbitration alternative to the N.R. A.B. And we should not frustrate the primary legislative purpose by unduly limiting the availability of this machinery designed as it was to expedite grievance settlements hopelessly in arrears.

The Firemen's Union could have indisputably presented these firemen-engineer claims to the N.R.A.B. and we should not deprive it of standing to process them before the special board in the absence of a clear legislative intent to do so. As Judge Arraj suggested "it would not be in keeping with the spirit of the [Railway Labor Act] to" restrict the availability of this special board machinery further than that required "by the specific wording of the act supported by persuasive reasons." Congress did exclude individual invocation of the special boards lest it result in a proliferation of such boards each with a single claim. Instead, it was contemplated "that a number of disputes will be referred to" a single board after being "carefully screened by the party submitting it." Senate Report No. 1201, 1966 U.S.Code Congressional and Administrative News, pp. 2286–2287. But there is nothing in this legislative manifestation from which it can be logically concluded that Congress intended that the statutory words "representative of any craft or class" be restricted to the collective bargaining agent.

The House Report did take note of some testimony relating to possible "labor pirating" under the amendment.[3]

---

3. House Report No. 1114 p. 14: "Some concern was expressed during the hearings by witnesses representing the carriers that the mechanism established by the bill could be used by one union for the purpose of raiding the membership of another. The committee feels that there is no cause for apprehension on this score, since all persons involved are expected to utilize and apply this legislation in good faith in accordance with it purpose and intent. This means that neither a union nor a carrier can properly demand the establishment of a special board with jurisdiction so broad as to invade the jurisdiction of another union as heretofore customarily respected in the establishment of special boards by voluntary agreement; should any party do so the party upon whom the demand is made would be expected to re-

But at the same time the House Committee answered its own question with the observation that settlement through the neutral person (procedural neutral) would alleviate this danger in matters of union jurisdiction. We are convinced that the statutory words "representative of any craft or class" mean precisely what they say and embrace the Firemen's representation of these claims.

The Engineers' Union argues, however, that if this construction is correct it runs afoul of the due process clause since representatives of the Railroad and the Firemen's Union are thus permitted to construe the collective bargaining contract of the Engineers. But the valid and litigable collective interest of the Engineers' Union was fully protected by the procedural neutral in his opinion as anticipated by the House Committee, i.e. footnote 3. In ruling that the special adjustment board had jurisdiction of these firemen-engineer claims the neutral directed that the agreement assuming jurisdiction for the merits board contain a provision whereunder the Firemen's handling of the engineers' claims would be governed and controlled by the interpretation and application placed upon the Engineers' contract by the Engineers' Union.

But the Engineers' Union argues that having already construed its contract to exclude these claims its interests are violated by the assumption of subject matter jurisdiction. We think this argument confuses issues of merits with questions of jurisdiction. As Judge Arraj, we also cannot presume that the special board, properly convened, will violate its jurisdictional agreement. But if it does, the Engineers' Union, as an interested party, is not without relief on judicial review. See § 153, Second and § 153, First (q). It is not without remedy. As Mr. Justice Brandeis observed in Myers, supra, 303 U.S. pp. 51–52, 58 S.Ct. p. 464, "the rule requiring ex-

haustion of the administrative remedy cannot be circumvented by asserting that the charge on which the complaint rests is groundless and that the mere holding of the prescribed administrative hearing would result in irreparable damage. Lawsuits also often prove to have been groundless; but no way has been discovered of relieving a defendant from the necessity of a trial to establish the fact."

Affirmed.

fuse to agree to such jurisdiction. Such refusal would then force a jurisdictional determination by a neutral designated as provided in the bill. The neutral, in turn,

would be expected to determine the jurisdiction of the board so as not to invade the established jurisdiction of another union."