**CHICAGO, ROCK ISLAND AND PACIFIC RAILWAY COMPANY, Plaintiff,**

v.

**NATIONAL MEDIATION BOARD, and Leverett Edwards, Howard G. Gamser and Francis A. O'Neil, Jr., Chairman and associate members, respectively, of the National Mediation Board, Defendants,**

**Eugene E. Wells, Intervenor.**

No. 69 C 347.

United States District Court
N. D. Illinois, E. D.

Nov. 21, 1969.

---

1. See Tobin v. Grossman, 24 N.Y.2d 609, 301 N.Y.S.2d 554, 249 N.E.2d 419 (1969).

418

E. D. Curlee and O. L. Houts, of Chicago, Ill., for plaintiff.

Thomas A. Foran, U. S. Atty., and Larry J. Cohen, Asst. U. S. Atty., for defendants.

Harold A. Sanford, Jr., of Gunther & Choka, Chicago, Ill., for intervenor.

MAROVITZ, District Judge.

## MEMORANDUM OPINION

### Cross Motions for Summary Judgment

This is an action by the Chicago, Rock Island and Pacific Railroad Company, a railroad carrier, to compel the National Mediation Board (NMB), an agency created by the Railway Labor Act, 45 U.S. C. § 154, to appoint a partisan member to a special board of adjustment pursuant to 45 U.S.C. § 153, second, in order to resolve a grievance claim filed on behalf of Eugene E. Wells, a former employee of the carrier and, by order of June 17, 1969, an intervening defendant in the instant action. Jurisdiction, 28 U.S.C. § 1337, and venue, 28 U.S.C. § 1391, are proper.

Both sides have moved for summary judgment. As there are no material factual issues outstanding, and the only question is which party is entitled to prevail as a matter of law, summary judgment is appropriate. Silverstein v. United States, 293 F.Supp. 1106, 1110 (N.D.Ill.1968).

The carrier discharged Wells, who was employed as a conductor, on October 27, 1964. Complaint, ¶ 6. On October 30, 1967, pursuant to 45 U.S.C. § 153, Wells filed a grievance with the First Division of the National Railroad Adjustment Board (NRAB) requesting reinstatement as a conductor employee and full compensation for the period of unemployment. *Id.* This claim was filed on behalf of Wells by his attorney, Harold A. Sanford. Horsley Affidavit, p. 1. A year after the grievance was filed on behalf of Wells and the claim still undecided, the carrier asked Mr. Sanford, as Well's Attorney, to agree to the establishment of a special board of adjustment, 45 U.S.C. § 153, Second, to resolve Well's grievance, Margason Affidavit, pp. 2–3. Sanford declined this request. *Id.*; NMB Exhibit No. 8, p. 2; Plaintiff's Memorandum in Support of Motion for Summary Judgment, Appendix VI; See NMB Exhibit 4. The carrier also requested the Brotherhood of Railroad Trainmen, a conductors union, to

join with it in an agreement to establish a special board of adjustment. Complaint, ¶ 9; NMB Exhibit No. 1 (Mallory's letter of November 7, 1968). The next day, November 8, 1968, the union refused to help establish the special board. Complaint, ¶ 9; NMB Exhibit No. 1 (Brockman's letter of November 8, 1968); see also Tracy affidavit ¶ 7; NMB Exhibit No. 8. Thereafter, on November 12, 1968, the carrier asked the NMB to appoint a partisan member to serve on the requested special board. Complaint, ¶ 9; Tracy affidavit, ¶ 2; NMB Exhibit No. 1 (Mallory's letter of November 12, 1968). The NMB declined to appoint a partisan member on February 10, 1969. Complaint, ¶ 9; Tracy affidavit, ¶ 10; NMB Exhibit 8; Plaintiff's Memorandum in Support of Motion for Summary Judgment, Appendix VI. The original reinstatement claim filed on behalf of Wells remains undecided. Margason Affidavit, ¶ 2; Horsley Affidavit, p. 1. Because a merger among four union members of the First Division board, raises a question as to the validity of its composition, the board has abstained from deciding cases which are before it. Horsley Affidavit.

In sum, the First Division board to which Wells appealed is, at present, unwilling or legally incapable of resolving Wells' grievance. However, Wells opposes the establishment of a special adjustment board as was sought by the carrier, and the NMB contends that it may not create such a board in this case.

Essentially, the NMB takes the position that it is under no obligation and, in fact, may not appoint a partisan member or otherwise assist in establishing a special board of adjustment where there is no dispute between a carrier and a union representative over the claim of an employee. Defendants' Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, p. 2; Tracy Affidavit, ¶ 10; Defendants' Exhibit 8, p. 3. Intervening defendant Wells similarly suggests that a special board of adjustment may not be created

when an employee chooses to have an attorney rather than a labor union prosecute his claim. Plaintiff contends that the real issue in determining the propriety of convening a special board is not the personnel of the board, but the nature of the dispute which the board is asked to resolve. Plaintiff's Reply to Intervenor's Memorandum, p. 1.

Labor disputes may be brought before a division of the NRAB pursuant to 45 U.S.C. § 153, First which provides:

"(i) The disputes between an employee or group of employees and a carrier or carriers growing out of grievances * * * shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes.

(j) Parties may be heard either in person, by counsel, or by other representatives, as they may elect, * * *."

The procedure for the establishment of a special adjustment board is set forth in 45 U.S.C. § 153, Second which states, in pertinent part, as follows:

"If written request is made upon any individual carrier by the representative of any craft or class of employees of such carrier for the establishment of a special board of adjustment to resolve * * * any dispute which has been pending before the Adjustment Board for twelve months from the date the dispute (claim) is received by the Board, or if any carrier makes such a request upon any such representative, the carrier or the representative upon whom such request is made shall join in an agreement establishing such a board within thirty days from the date such request is made. * * * Such board shall consist of one person designated by the carrier and one person designated by by rep-

resentative of the employees. If such carrier or such representative fails to agree upon the establishment of such a board as provided herein, or to exercise its rights to designate a member of the board, the carrier or representative making the request for the establishment of the special board may request the Mediation Board to designate a member of the special board on behalf of the carrier or representative upon whom such request was made. Upon receipt of a request for such designation the Mediation Board shall promptly make such designation and shall select an individual associated in interest with the carrier or representative he is to represent, who, with the member appointed by the carrier or representative requesting the establishment of the special board, shall constitute the board."

Plaintiff is clearly correct insofar as it contends that a special board of adjustment would have subject matter jurisdiction over the dispute between Wells and the carrier. It is clear that Wells' grievance has been pending before the adjustment board for over twelve months and, for that reason alone, is ripe for consideration by a special adjustment board.

■ Yet, if the subject matter of the grievance is properly presentable to a special board, the question of standing to present the dispute to the board stills remains unresolved. In order to convene a special board, the "representative of any craft or class" must serve a written request upon the carrier or the latter must serve such a request upon the former party. Both the NMB and the intervening defendant contend that the "representative of any craft or class" means a labor organization. Thus, they argue that the plain meaning of the statutory language is that the only disputes which are decidable by a special board are those between a carrier and a union representative over an employee's claim.

Plaintiff does not dispute the position that the statute requires appointment of representatives of railway labor organizations and further states that railway labor personnel were to be named because of their knowledge and experience in a highly specialized field. Plaintiff's Memorandum in Support of Motion for Summary Judgment, p. 17. However, plaintiff nevertheless contends that the NMB can and must appoint a partisan member to a special adjustment board even if the claimant-employee chooses to have his claim prosecuted by an attorney and not by a union.

■ It is difficult to avoid the conclusion that Congress established two separate procedural devices for dealing with identical subject matter. Certainly, the subject matter jurisdiction of the special board is coextensive with that of the Adjustment Board. Brotherhood of Locomotive Engineers v. Denver & R. G. W. R. R., 290 F.Supp. 612, 620 (D.Colo. 1968), aff'd, 411 F.2d 1115 (10th Cir. 1969). However, while a grievance may be brought before the NRAB by an individual *pro se* or by any designated representative including an attorney, Elgin, J. & E. Ry. Co. v. Burley, 325 U.S. 711, 734–736, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945), aff'd on rehearing, 327 U.S. 661, 66 S.Ct. 721, 90 L.Ed. 928 (1946); Brotherhood of Locomotive Engineers v. Denver R. G. W. R. R., 411 F.2d 1115; 1117–1118 (10th Cir. 1969); McElroy v. Terminal R. R. Ass'n of St. Louis, 392 F.2d 966, 969 (7th Cir. 1968), cert. denied, Brotherhood of Locomotive Engineers v. McElroy, 393 U.S. 1015, 89 S. Ct. 610, 21 L.Ed.2d 559 (1969), there is no language in 45 U.S.C.A § 153, Second which permits an individual, *pro se* or through an attorney, to initiate or to reply to a request seeking the convening of a special board. Rather, the initiation or reply must come from a "representative of any craft or class of employees." Thus, the Tenth Circuit recently approved a lower court's conclusion "that an individual could not invoke the provisions of the (statute) to convene a special adjustment board to handle his grievance, but rather Congress intended to limit the availability of this machinery to a union representative." Brotherhood of Locomotive Engineers v.

Denver & R. G. W. R. R., 411 F.2d 1115, 1118 (10th Cir. 1969).

Having come this far together, both sides draw different conclusions from the fundamental principle as set forth in Elgin, J. & E. Ry. Co. v. Burley, 325 U. S. 711, 736, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945) that the Railway Labor Act grants employees the right to prosecute his grievances as he elects. Plaintiff suggests that as no dispute wherein the employee was represented by other than a union could be withdrawn from the NRAB and submitted to a special board, that as resolution by the NRAB often takes many years, few employees would choose self-representation or representation by counsel for to do so would result in a delayed resolution of their grievance. Plaintiff's Memorandum in Support of Motion for Summary Judgment, pp. 18–19. Of course, it is difficult to know with any degree of reasonable certainty how the potential lack of access to a special board affects an employee's choice of representatives. However, it is clear that in the instant case, the first of which we are aware that deals with the problem, that the employee has, in fact, chosen to be represented by counsel. Moreover, he vigorously opposes the appointment of the Brotherhood of Railroad Trainmen (BRT) or any other union to represent his claim. Tracy Affidavit, ¶ 6; NMB Exhibit No. 4. In addition, the BRT explicitly refused to act as Wells' representative in this matter, Tracy Affidavit, ¶ 3; NMB Exhibit No. 2, and the Order of Railway Conductors and Brakemen (ORCB) whose assistance Wells' originally sought in prosecuting his claim, Tracy Affidavit, ¶ 5, NMB Exhibit No. 4, is now a defendant in an action brought by Wells before another court in this district for alleged failure to properly provide representation. Id., see Wells v. Order of Railway Conductors and Brakemen, 68 C 193, N.D.Ill.

■ Consequently, to permit the carrier to select either of these labor unions to represent Wells' interest would be absurd. Similarly, to require the NMB to appoint a labor oriented representative for Wells would be effectively depriving him of his fundamental right to prosecute his grievance as an individual, independent of union interference. That is, should we find that the NMB is empowered to appoint an unknown representative, any carrier, by waiting for a year to pass and then requesting the creation of a special board, could deprive an individual of his right to proceed *pro se* or by counsel before the NRAB.

We recognize that this decision restricts the availability of the special board machinery, but can only note that this result is compelled by the language of the statute and supported by persuasive reasoning. *Cf.* Brotherhood of Locomotive Engineers v. Denver & R. G. W. R. Co., 290 F.Supp. 612, 620 (D. Colo.1968), aff'd 411 F.2d 1115 (10th Cir. 1969). A carrier may not invoke the special board machinery against an individual employee not represented by a union any more than the latter may invoke the law against the former. Compare, *id.*, 411 F.2d at 1118. Nor can a carrier avoid this predicament by making requests upon union representatives whose interests are not in accord with those of the allegedly aggrieved employee. Had Section 153, Second contained language to the effect that a request for a special board may be made upon or by a representative of any employee as well as of any craft or class of employees, a different result would obtain. Of course, that language is not in the act and neither this nor any other court may put it there. At various points in the Congressional review of this procedure, reference is made to the "employee representative." 1966 U.S. Code Cong. & Admin.News, 89th Cong. 2d Sess., at 2285, 2287, 2289. Yet, even this, without more, would not be enough to justify reading into the statute something which is not there. For that matter, the literal reading was also embraced in Congress, with references made to "a representative of * * * labor." *Id.* at 2289.

It is clear that this decision is contrary to a Congressional policy concerning the quick resolution of railroad labor disputes. As stated in the Senate Report on this aspect of the railway labor act,

"(t)he principle purpose of the bill is to eliminate the large backlog of undecided claims of railroad employees pending before the National Railroad Adjustment Board * * *." *Id.* at 2285. See also Cong.Rec. (House-February 9, 1966; Senate—June 7, 1966), attached as Appendixes IV & V to Plaintiff's Memorandum in Support of Motion for Summary Judgment.

This inconsistency, however, is the fault of Congress. It alone has the power and prerogative to expand the review jurisdiction of a special adjustment board or to reconstitute the NRAB so that the latter can function normally.

As much as we dislike leaving the merits of this case unresolved, we are helpless to do otherwise. Plaintiff's motion for summary judgment is denied. Defendants' motion for summary judgment is granted.