CHICAGO, ROCK ISLAND AND PACIF-
IC RAILROAD COMPANY, Appellant,

v.

NATIONAL MEDIATION BOARD et al.,
Appellees,

and

Eugene E. Wells, Appellee.

No. 18206.

United States Court of Appeals,
Seventh Circuit.

Dec. 15, 1970.

E. D. Curlee, O. L. Houts, Chicago, Ill., for appellant Chicago, Rock Island and Pacific Railroad Co.

Morton Hollander, Chief, Appellate Section, William D. Ruckelshaus, Asst. Atty. Gen., Thomas A. Foran, U. S. Atty., Walter H. Fleischer, Atty., U. S. Dept. of Justice, Washington, D. C., for appellee.

Before FAIRCHILD and CUMMINGS, Circuit Judges, and REYNOLDS, District Judge.[1]

CUMMINGS, Circuit Judge.

This appeal involves the question whether Section 3 Second of the Railway Labor Act (45 U.S.C. § 153 Second) entitles a railroad to the creation of a Special Board of Adjustment where the grievance of an individual employee, being processed without the aid of a union, has been pending before the National Railroad Adjustment Board for more than a year.

In October 1964, Eugene E. Wells was discharged from his job as conductor by the Chicago, Rock Island and Pacific Railroad (the "Carrier"). Pursuant to an election, the Brotherhood of Railroad Trainmen ("Trainmen") had been certified as the collective bargaining representative for the Carrier's conductors. However, Wells was a member of the

---

1. Judge Reynolds of the United States District Court for the Eastern District of Wisconsin is sitting by designation.

Order of Railway Conductors and Brakemen ("Conductors") and not of the Trainmen.

■ In the initial stage of processing his grievance, Wells was represented by the Conductors.[2] He became dissatisfied with this representation and retained counsel to file a submission with the First Division of the National Railroad Adjustment Board on October 30, 1967, seeking reinstatement with seniority rights unimpaired and with full pay for lost time. Thus far, the First Division has refused to accept the Carrier's allegedly untimely response to Wells' submission. It has not yet rendered an award.

On November 7, 1968, the Carrier requested the Trainmen to agree to the establishment of a Special Board of Adjustment (sometimes termed a Public Law Board) to resolve the dispute pursuant to Section 3 Second of the Railway Labor Act. The Trainmen refused. Wells had previously refused a similar request.

On November 12, 1968, in reliance upon the same statutory provision, the Carrier requested the National Mediation Board to designate a partisan member to serve for the Trainmen along with the Carrier's representative on a Special Board. This request was denied on February 10, 1969, on the following ground:

"It should be noted that P.L. 89–456 [Section 3 Second of the Railway Labor Act as amended in 1966] contemplates a dispute between the carrier and the [union] representative of an employee's craft or class. Otherwise, a single employee with a minor grievance could either enter into an agreement with a carrier establishing a Special Board of Adjustment or invoke the Mediation Board's service in establishing a P. L. Board. Such a result would be inconsistent with the language of both 45 U.S.C. 153, Second, and P.L. 89–456, both of which speak in terms of disputes between carriers on the one hand and employees' [union] representatives on the other."

Thereafter the Carrier filed this action, in the nature of mandamus, requesting the district court to order the National Mediation Board to appoint a partisan member to serve on a Special Board of Adjustment. This was opposed by the Government and by Wells.[3] We affirm the district court's summary judgment refusing to compel the appointment.

In pertinent part, Section 3 Second of the Railway Labor Act provides:

"* * * If written request is made upon any individual carrier by the representative of any craft or class of employees of such carrier for the establishment of a special board of adjustment to resolve disputes otherwise referable to the Adjustment Board, or any dispute which has been pending before the Adjustment Board for twelve months from the date the dispute (claim) is received by the Board, or if any carrier makes such a request upon any such representative, the carrier or the representative upon whom such request is made shall join in an agreement establishing such a board within thirty days from the date such

---

2. Even though Trainmen were the collective bargaining representative of Rock Island conductors, Wells had the prerogative of designating the Conductors to process his grievance on the property of the Carrier and before the National Railroad Adjustment Board or a Special Board. McElroy v. Terminal Railroad Association of St. Louis, 392 F.2d 966 (7th Cir. 1968), certiorari denied, 393 U.S. 1015, 89 S.Ct. 610, 21 L.Ed.2d 559; Brotherhood of Locomotive Engineers v. Denver & Rio Grande Western R. Co., 411 F.2d 1115 (10th Cir. 1969).

3. Wells has not participated in this appeal but has advised our Clerk that he "has a unity of interest" with the position taken by the Government.

request is made. The cases which may be considered by such board shall be defined in the agreement establishing it. Such board shall consist of one person designated by the carrier and one person designated by the representative of the employees. If such carrier or such representative fails to agree upon the establishment of such a board as provided herein, or to exercise its rights to designate a member of the board, the carrier or representative making the request for the establishment of the special board may request the Mediation Board to designate a member of the special board on behalf of the carrier or representative upon whom such request was made. Upon receipt of a request for such designation the Mediation Board shall promptly make such designation and shall select an individual associated in interest with the carrier or representative he is to represent, who, with the member appointed by the carrier or representative requesting the establishment of the special board, shall constitute the board. * * *" 45 U.S.C. § 153 Second.

■ Wells' dispute was pending before the First Division of the National Railroad Adjustment Board for more than 12 months. The Carrier asserts that under the foregoing language, it was entitled upon request to have the Trainmen as "the representative of any craft or class of employees of such carriers," join in an agreement establishing a Special Board, or otherwise have the National Mediation Board designate a labor member to sit with a carrier member on a Special Board. This would be true if the Trainmen, the certified representative of the Carrier's conductors, had been Wells' representative in processing his grievance before the First Division. However, he chose to process this grievance individually there, as per-

mitted under Elgin, Joliet & Eastern Ry. Co. v. Burley, 325 U.S. 711, 65 S.Ct. 721, 90 L.Ed. 928. There being no dispute between the Trainmen or a union designated by Wells and the Carrier with respect to Wells' grievance, the Special Board machinery did not become operative.

As used throughout this part of Section 3 Second, "representative" means "representative of any craft or class of employees of such carrier," referring to the certified union or the union selected by the individual employees for processing their grievances. Accordingly, the Carrier's brief acknowledges that the initial designation of the second member of the Special Board must be by a labor organization. But the statutory phrase "one person [labor member] designated by the representative of the employees" contemplates designation by a union actually representing the employee in the dispute. In the absence of such a designation, the National Mediation Board could not select as the second member of a Special Board "an individual associated in interest with the * * * [union] representative [of any craft or class of employees] he is to represent," for as to this grievance Wells was unrepresented by the Trainmen, the Conductors, or any union.

Congress did not provide for a Special Board where, as here, the dispute is between an individual employee and a carrier. Brotherhood of Locomotive Engineers v. Denver & Rio Grande Western R. Co., 411 F.2d 1115, 1117–1118 (10th Cir. 1969); Antonioli v. Lehigh Coal and Navigation Co., 47 F.R.D. 198, 200–201 (E.D.Pa.1969).[4] Since Wells as an individual concededly could not require the Carrier to participate in a Special Board, it would be inequitable to interpret Section 3 Second as compelling Wells so to participate on the Carrier's request. Moreover, as the district court

4. Insofar as Long Island R. Co. v. National Mediation Board, 70 LRRM 2757, 2758 (E.D.N.Y.1968), reaches a contrary conclusion, we decline to follow that decision.

noted, if the National Mediation Board were forced to appoint a Special Board "labor oriented representative for Wells," he would be deprived of his right to proceed before the National Railroad Adjustment Board. Nothing in Section 3 Second or its legislative history shows that Congress intended to deprive him of that right.[5]

■ Our holding that neither a carrier nor an individual employee can secure a Special Board when the employee's grievance is not being processed by a union comports with the Congressional intent to avoid a proliferation of special boards where the claims have not been previously screened by the union or railroad. S.Rep.No.1201, 89th Cong., 2d Sess. (1966), p. 2. Furthermore, if our construction were otherwise, this Carrier could obtain a Special Board by lodging a request with either Trainmen or Conductors, even though Wells wished neither organization to represent him!

When the Carrier filed this complaint, the First Division was inoperative because four of the five unions representing employees before that Division had merged on January 1, 1969, thus making it impossible to comply with the then membership provisions of Section 3 First (c) and Section 3 First (h) of the Act. However, Congress has subsequently amended those provisions to reconstitute the First Division's membership. Since that roadblock has been obviated, the First Division should make every effort to dispose of this overstale submission forthwith.[6]

Affirmed.

---

5. As Professor Archibald Cox pointed out in the opinion and award on the jurisdiction of Public Law [Special] Board No. 87 in Matter of Brotherhood of Railroad Trainmen and Boston and Maine Corp. (January 22, 1968), the National Railroad Adjustment Board is sometimes a more neutral tribunal than a Special Board for the following reasons:

"First, the danger that one organization will be represented on the tribunal while the other is unrepresented does not arise in all cases. Often a case will come before a division [of the National Railroad Adjustment Board] on

---

which both parties are represented or neither.

"Second, the chance that selfish interests will influence the outcome is considerably diluted by the number of members on each division and the extent of their removal from the controversy."

6. Discharge cases are to be given priority over other claims, H.R.Rep.No.1114, 89th Cong., 1st Sess. (1965), p. 10; Hearings on H.R. 706, 89th Cong., 2d Sess. (1966) before Subcommittee on Labor of Senate Committee, on Labor and Public Welfare, pp. 46, 59.