**Eugene E. WELLS, Plaintiff-Appellant,**

v.

**ORDER OF RAILWAY CONDUCTORS AND BRAKEMEN et al., Defendants-Appellees.**

**No. 18463.**

United States Court of Appeals, Seventh Circuit.

May 13, 1971.

Harold A. Sanford, Jr., Eugene E. Wells, Antonow, Fink, Gunther & Epstein, Chicago, Ill., for appellant.

Burke Williamson, Jack A. Williamson, Chicago, Ill., for appellees; Adams, Williamson & Turney, Chicago, Ill., of counsel.

Before HASTINGS, Senior Circuit Judge, and KILEY and KERNER, Circuit Judges.

HASTINGS, Senior Circuit Judge.

Plaintiff Wells, a discharged railway conductor, brought this action for damages in the United States District Court pursuant to the provisions of the Railway Labor Act, Title 45, U.S.C.A. § 151 et seq. The complaint charged the defendant labor organizations[1] with failure to represent Wells fairly in the enforcement of a collective bargaining agreement and with neglect in the prosecution of his claim for reinstatement before the National Railroad Adjustment Board. In the alternative, he sought damages from defendant Chicago, Rock Island and Pacific Railroad Company for its allegedly wrongful discharge of him.

The railroad was dismissed as a party defendant by stipulation. Thereafter, plaintiff filed an amended complaint realleging the misconduct by the labor organizations and seeking damages against them. Defendants moved to dismiss the amended complaint. From an order granting such motion, D.C., 308 F. Supp. 397, plaintiff appeals. We affirm.

According to the alleged and stipulated facts, appellant Wells was employed as a conductor by the Chicago, Rock Island and Pacific Railroad Company until his discharge in October, 1964, for alleged rules infractions. Conductors employed by the railroad were, and had been since a certification election in 1959, represented for purposes of collective bargaining under the Railway Labor Act, supra, by the Brotherhood of Railroad Trainmen. Prior to the certification of the Brotherhood of Railroad Trainmen, the conductors were represented by the Order of Railway Conductors and Brakemen.

At the time of his discharge, Wells was an active member in good standing of Local # 106 of the Order of Railway Conductors and Brakemen which was affiliated with the Rock Island Lines Order of Railway Conductors and Brakemen General Committee of Adjustment and the national Order of Railway Conductors and Brakemen. As part of its free service to members, the ORCB undertook the prosecution of Wells' grievance of wrongful discharge against the

1. The labor organizations named as defendants were the Order of Railway Conductors and Brakemen, the Rock Island Lines Order of Railway Conductors and Brakemen, and Local #106 of the Order of Railway Conductors and Brakemen. Also named was the General Committee of Adjustment of the United Transpor- tation Union, Rock Island Lines. The United Transportation Union succeeded the Order of Railway Conductors and Brakemen on January 1, 1969. Hereinafter, the above labor organizations will be referred to as the "ORCB" for convenience.

railroad. After bargaining with the ORCB, the railroad refused to reinstate him on May 19, 1965.[2]

The ORCB then informed Wells that it would continue to prosecute his grievance by submitting it to the National Railroad Adjustment Board (NRAB). It failed to file his claim with the NRAB as promised within the time limit provisions of the collective bargaining agreement, one year.

In October, 1967, Wells retained private counsel who filed a claim with the NRAB for reinstatement, with back pay, to the employ of the railroad.[3] Thereafter, he instituted this action against defendant unions.

The ORCB moved to dismiss appellant's amended complaint alleging that the court lacked jurisdiction over the subject matter, that the service of process was insufficient and that the complaint failed to state a claim upon which relief could be granted. In a well considered memorandum opinion, the district court held "that the ORCB as a minority union had no duty grounded in the Railway Labor Act to fairly represent its member in a grievance dispute" and ordered the complaint dismissed for want of jurisdiction over the subject matter.

Arguing from our recent recognition of the right under the Railway Labor Act of employees to be represented in their grievances by a minority union, McElroy v. Terminal Railroad Association, 7 Cir., 392 F.2d 966 (1968), cert. denied, Brotherhood of Locomotive Engineers v. McElroy, 393 U.S. 1015, 89 S.

Ct. 610, 21 L.Ed.2d 559 (1969), appellant contends that a minority union owes members for whom it processes grievances the same duty of fair representation under the Act as does a majority union. If this contention is correct, a complaint alleging a breach of that duty invokes federal jurisdiction pursuant to Title 28 U.S.C.A. § 1337.[4]

It is well established that majority unions under the Railway Labor Act owe a statutory duty of fair representation to railway employees. In the leading case of Steele v. Louisville & Nashville R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944), the Supreme Court was confronted with an allegation that a majority union, purporting to act as the representative of the entire craft of firemen, notified the railroad and successfully bargained to amend an existing collective bargaining agreement to ultimately exclude all Negro firemen from the service. Likening the powers conferred upon the exclusive bargaining representative under the Act to those possessed by a legislative body and imposing "the duty to exercise fairly the power conferred upon it in behalf of all those for whom it acts, without hostile discrimination against them," id. at 203, 65 S.Ct. at 232, the Court held such allegations were sufficient to state a cause of action against the union.[5]

The Court extended the duty of fair representation to include not only the negotiation of collective bargaining agreements, but also the administration of such agreements in Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The majority union therein al-

---

2. Wells claims that the ORCB negotiated, contrary to his specific request, in a manner that would have denied him back pay.

3. The railroad failed to file its answer to Wells' claim within the time allotted by the NRAB. It is asserted that in such cases it is customary for the Board to grant the relief sought by the claimant. Thus far the Board has failed to act. See, Chicago, Rock Island and Pacific Railroad Company v. National Mediation Board, 7 Cir., 435 F.2d 339 (1970).

4. Title 28, U.S.C.A. § 1337 provides:
   "The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies."

5. In a companion case, the Court found jurisdiction for such an action in nondiversity cases. Turstall v. Brotherhood of Locomotive Firemen & Enginemen, 323 U.S. 210, 65 S.Ct. 235, 89 L. Ed. 187 (1944).

legedly refused to protect Negroes from wrongful discharge under the collective bargaining agreement although it undertook the prosecution of similar grievances for its white employees. The Court, noting that the Railway Labor Act had conferred great power and protection on majority unions and that individuals or small groups of employees could not possess the bargaining power of the majority in the presentation of grievances, held the allegations sufficient to state a federal cause of action. *Id.* at 47, 78 S.Ct. at 99.[6]

■ The rationale of such cases is that in order to shield employees from arbitrary acts of an exclusive bargaining agent statutorily clothed with broad authority and protection, there must be a concomitant statutory responsibility of fair representation to all employees subject to its power. Humphrey v. Moore, 375 U.S. 335, 342, 84 S.Ct. 363, 11 L. Ed.2d 370 (1964). As the Court stated in Vaca v. Sipes, 386 U.S. 171, 177, 87 S.Ct. 903, 910, 17 L.Ed.2d 842 (1967):

"*\* \* \** [T]he *exclusive agent's statutory authority* to represent all members of a designated unit *includes a statutory obligation* to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." (Emphasis supplied.)

Thus, the duty of fair representation flows from the majority union's status as a statutorily recognized exclusive bargaining agent.

Appellant urges, however, that the recent decisions of McElroy v. Terminal Railroad Association, *supra,* and Brotherhood of Locomotive Engineers v. Denver & Rio Grande Western Railroad Co., 10 Cir., 411 F.2d 1115 (1969), establish that, insofar as grievances are concerned, a minority union has coextensive

rights and authority with a majority union and, therefore, a coextensive duty.

In *McElroy, supra,* we relied on Elgin, Joliet and Eastern Railway Co. v. Burley, 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945), in holding that an employee may designate a minority union to represent him before the National Railway Adjustment Board. The Supreme Court in *Burley, supra,* determined that, absent an intention by Congress to nullify such rights, individual employees have the statutory right to present their grievances before the Board. We reasoned that the individual's right to be represented before the Board by his designee, a minority union, likewise, could not be nullified unless Congress clearly intended such consequences. Following our decision in *McElroy,* the Tenth Circuit held that an employee could also designate a minority union to establish with a carrier a Special Board of Adjustment pursuant to Title 45, U.S.C.A. § 153 (Second). Brotherhood of Locomotive Engineers v. Denver & Rio Grande Western Railroad Co., *supra.*

■ These cases do not suggest that an employee's designation of a minority union as his representative before the Board enlarges the union's authority or protection under the Act to the status enjoyed by majority unions. Rather, the minority union occupies the same status as any other agent, such as an attorney, that an employee may choose to represent him in grievance proceedings before the NRAB.

We conclude that a *minority union* designated by an employee to represent him in the prosecution of his grievance before the National Railroad Adjustment Board, and which undertakes such prosecution, owes no duty of fair representation *stemming from the Railway Labor Act.* Accordingly, since no other ground of jurisdiction has been asserted,

---

6. The courts have also recognized that the duty of fair representation extends to nonracial discriminations such as the refusal to press a nonmember's grievance.

See, Hughes Tool Co. v. National Labor Relations Board, 5 Cir., 147 F.2d 69, 74 (1945).

the district court properly dismissed appellant's amended complaint.

From the view taken of this case, we find it unnecessary to consider appellees' other contentions. The order of dismissal of the district court will be affirmed.

Affirmed.