The **DENVER AND RIO GRANDE WESTERN RAILROAD COMPANY,** a corporation, Plaintiff,

v.

Marie **BLACKETT et al., Defendants.**

Civ. A. No. C–5220.

United States District Court, D. Colorado.

July 14, 1975.

John S. Walker, Jr., Denver, Colo., for plaintiff.

John J. Rossi, Aurora, Colo., Russell M. Baker, Baker & Foreman, Dallas, Tex., for defendants.

## OPINION AND ORDER

CHILSON, District Judge.

The plaintiff, the Denver and Rio Grande Western Railroad Company, seeks review of an arbitration award granted by Public Law Board No. 862 under the Railway Labor Act, 45 U.S.C. § 153, Second, in favor of H. B. Blackett, one of its employees, and the United Transportation Union (Switchmen), both of whom are the original defendants in this action. The defendants counterclaim for the enforcement of the award and damages. Since this action was begun, H. B. Blackett has died and his heirs, Marie Blackett, Shirlee Ray Smith and Dennis H. Blackett, have been substituted in his stead. At the trial to the Court, both sides waived the presentation of evidence and the matter was submitted upon affidavits and briefs.

Blackett was a switchman for the Denver and Rio Grande Western Railroad (D.&R.G.W.R.R.) and a member of the United Transportation Union (U.T.U.). However, it was his work at various times as an extra relief yardmaster which led to the present controversy. As the phrase "extra relief yardmaster" implies, such temporary duty is performed only when the yardmaster work cannot be filled by the regular yardmasters available. The extra relief yardmasters are selected solely from the ranks of switchmen on the basis of seniority.

The yardmasters are represented by the Railroad Yardmasters of America (R.Y.A.), which was neither a party to the original arbitration proceeding nor a party to the present action. The collective bargaining agreement between the R.Y.A. and the D.&R.G.W.R.R., which is separate and apart from the U.T.U.–D.&R.G.W.R.R. agreement, provides in Article 15(d):

"New employees or employees promoted to position of Yardmaster must serve a test period of 60 shifts within a period of one year (365 days) from date of first shift worked as Yardmaster, to demonstrate fitness and ability. Prior to the completion of 60 shifts the employee may be disqualified as a yardmaster by written notice from an authorized representative of the carrier. After completion of sixty

shifts without prior written notice of disqualification, the employee shall be considered qualified."

By virtue of this clause, the plaintiff disqualified Blackett on March 27, 1971, from the position of yardmaster before Blackett had served the required 60 shifts within a one-year period between July 26, 1969, and March 27, 1971.

The defendants contend that Blackett had already qualified twice as an extra relief yardmaster by performing the required 60 shifts within a one-year period between 1947 and 1950 and between 1952 and 1957, and that therefore the disqualification on March 27, 1971, violated Article 16(a) of the yardmasters' agreement:

> "Except as provided in Article 15(d), yardmasters will not be demoted or dismissed without a fair hearing, which shall be held within thirty (30) days after relevant facts become known to the company . . . ."

The Public Law Board, taking the view of Blackett, ruled in his favor. The plaintiff asks the Court to rule that the award is invalid and unenforceable. The defendants counterclaim for the enforcement of the award, for damages and for costs and attorney's fees.

## VALIDITY OF THE AWARD

45 U.S.C. § 153, First (p)–(q) and Second set out the scope of judicial review of awards made pursuant to the Railway Labor Act. As is the case with traditional labor arbitration cases, the Court may not review the findings upon which the award is based. Rather it must confine itself to inquiring whether the board exceeded its jurisdiction, the order failed to conform to the requirements of the Railway Labor Act, or the order was based upon fraud or corruption. *Diamond v. Terminal Railway Alabama State Docks*, 421 F.2d 228 (5th Cir. 1970). Within this narrow framework of judicial review of the arbitration award, the D.&R.G.W.R.R. raises two basic objections to the award of Public Law Board No. 862: 1) that the Board did not have jurisdiction to decide a dispute between the plaintiff railroad and the defendant employee since it involved the interpretation of an agreement between the D.&R.G.W.R.R. and a third party (R.Y.A.), which was not before the Public Law Board; and 2) the neutral member of Public Law Board No. 862 exceeded his authority by not only deciding the jurisdictional issue but also deciding the case on its merits.

*Jurisdiction of Public Law Board No. 862*

The plaintiff contends that the Public Law Board was without jurisdiction to make an award since it did not have all the parties before it which were "involved" in the dispute. 45 U.S.C. § 153, First (j). It argues that since Blackett's rights were determined under the yardmasters' agreement and since the Board allegedly construed the yardmasters' agreement contrary to the intent of the parties to that agreement, the presence of the R.Y.A. in the arbitration proceedings was necessary for the Board to obtain jurisdiction. The D.&R.G.W. R.R. relies heavily on *Transportation-Communication Employees Union v. Union Pacific Railroad Co.*, 385 U.S. 157, 87 S.Ct. 369, 17 L.Ed.2d 264 (1966), hereinafter referred to as *TCE*, to support its position.

However, *TCE* and the cases decided under it are inapposite. In all those cases the Board lost jurisdiction if third parties, whose *rights* were involved, were not participants in the arbitration proceedings. In *TCE* the dispute was over which union had the right to given jobs. In *Brotherhood of Railroad Signalmen of America v. Southern Railway Co.*, 380 F.2d 59 (4th Cir. 1967), cert. denied, 389 U.S. 958, the dispute again involved the rights of two different unions to the same work. In *Columbia Broadcasting System, Inc. v. American Recording and Broadcasting Ass'n*, 414 F.2d 1326 (2nd Cir. 1969) it was again necessary to have all parties before the Board who were claiming the right to the work: the company, which

claimed the right to distribute the work as it saw fit and the two unions, both of which claimed a contractual right to the work under their respective collective bargaining agreements. In all of these cases the two unions were involved to the extent of claiming a conflicting right to the same work. Stated conversely, if separate arbitrations were held between the employer and the two unions, the possibility of double liability existed for the employer.

In the instant case, neither of these factors was present. The U.T.U. was the only union which filled the position of *extra relief* yardmaster from its members; the rights of the R.Y.A. and its members were not affected since extra relief yardmaster positions opened up only when no more yardmasters were available. The dispute in this case was not whether regular yardmasters were available to perform the work done by Blackett but only whether Blackett was improperly disqualified by the employer from engaging in extra relief yardmaster work when it was clearly available. Nor was there a possibility of double liability on the part of the D.&R.G.W.R. R.; only one union and only one employee claimed they had wrongfully been deprived of work. Thus, the possibility of an award of the same work to another claimant in a later arbitration did not exist and was not a factor for consideration.

The policy behind requiring the presence of all parties to a dispute to be present when more than one union asserts the same right to the same work is to foster industrial peace. The "entire dispute" should be settled once and for all, rather than raising the possibility of two or more arbitrations with the competing unions leading to inconsistent and perhaps disruptive results. *TCE, supra; Columbia Broadcasting, supra; Brotherhood of Railroad Signalmen, supra.* The fact that the yardmasters' agreement was interpreted to determine the rights of the defendant-employee does not mean that the R.Y.A.'s

rights were involved. Indeed, the Board had an obligation to look to the customs and traditions in the industry beyond the collective bargaining agreement between the U.T.U. and the D.&R.G.W.R. R. This may include looking to the collective bargaining agreements between the same employer and other unions. *TCE, supra,* at 161. The Courts should give full leeway to the expertise of arbitrators in deciding these controversial issues. *Gunther v. San Diego and Arizona Eastern Railway Co.,* 382 U.S. 257, 86 S.Ct. 368, 15 L.Ed.2d 308 (1965). But since the R.Y.A. was not present in the proceeding it was not bound by the Board's interpretation and since no rights of the R.Y.A. were at stake in the proceeding, there was no possibility that an arbitration award between the U.T.U. and the D.&R.G.W.R. R. would create a new dispute between the R.Y.A. and the D.&R.G.W.R.R. and therefore no threat to industrial peace. This being the case, the Public Law Board clearly had jurisdiction to decide the dispute between the D.&R.G.W.R.R. and the defendants without the presence of the R.Y.A.

The plaintiff also cites *Brotherhood of Locomotive Engineers v. Denver and Rio Grande Western Railroad Co.,* 411 F.2d 1115 (10th Cir. 1969), to support its contention that Public Law Board No. 862 lacked jurisdiction. In that case, a member of the firemen's union was prosecuting a grievance against the railroad, but because the employee was working as an engineer when the dispute arose, the dispute was to be settled according to the terms of the agreement between the engineers' union and the railroad. The Court held that although the engineers' union was not a party to the dispute, the Public Law Board had jurisdiction to decide the issue and therefore denied the engineers' union an injunction preventing the Board from acting. The only distinction from the present suit is that in the jurisdictional agreement the dispute was to be disposed of according to the recognized in-

terpretation given to the engineers' union-railroad agreement by the parties to that agreement. 411 F.2d at 1117, n. 2. In the instant case, the plaintiff contends that interpretation of the R.Y.A.–D.&R.G.W.R.R. contract *contrary* to the parties' intent violates the due process clause. The due process rights of the D.&R.G.W.R.R. were of course not violated since it was present to defend its position. Nor was the R.Y.A. deprived of due process since as noted above none of its employees or rights were involved in the dispute and it was not bound by the Board's interpretation of the R.Y.A.–D.&R.G.W.R.R. agreement.

*Brotherhood of Locomotive Engineers* in actuality supports the enforceability of the arbitration award in the present case. The injunction was denied the engineers' union, thus allowing the arbitration to proceed only between the railroad and the firemen's union. That is clearly the same fact situation that is now before the Court. Furthermore, in *Brotherhood of Locomotive Engineers,* the engineers' union itself was raising the alleged violation of its due process rights. It is questionable whether in the instant case the D.&R.G.W.R.R. is the proper party to attack the award because of the supposed violation of the rights of a third party not involved in this action.

*Procedural Irregularities*

■ Public Law Boards consist of one member appointed by the employer, one member appointed by the union and one member appointed by the National Mediation Board when the two partisan members cannot agree on the third member. The plaintiff contends the neutral member of the Board is authorized to participate only in the resolution of procedural issues and that his participation in the determination of jurisdictional issues and a resolution of the case on its merits exceeded his authority and cites 29 C.F.R. § 1207.1(b) which states:

"(b) *Appointment of a procedural neutral to determine matters concerning the establishment and/or jurisdiction of a PL Board.* (1) When the members of a PL Board constituted in accordance with paragraph (a) of this section, for the purpose of resolving questions concerning the establishment of the Board and/or its jurisdiction, are unable to resolve these matters, then and in that event, either party may ten (10) days thereafter request the Mediation Board to appoint a neutral member to determine these procedural issues.

(2) Upon receipt of this request, the Mediation Board will notify the other party to the PL Board. The Mediation Board will then designate a neutral member to sit with the PL Board and resolve the procedural issues in dispute. When the neutral has determined the procedural issues in dispute, he shall cease to be a member of the PL Board."

45 U.S.C. § 153, Second, the authority under which the Public Law Board was established, states in pertinent parts:

"If with respect to any dispute or group of disputes the members of the board designated by the carrier and the representative are unable to agree upon an award disposing of the dispute or group of disputes they shall by mutual agreement select a neutral person to be a member of the board for the consideration and disposition of such dispute or group of disputes."

29 C.F.R. § 1207.1(c) provides additional authority:

"(c) *Appointment of neutral to sit with PL Boards and dispose of disputes.* (1) When the members of a PL Board . . . are unable within ten (10) days after their *failure to agree upon an award* to agree upon the selection of a neutral person, either member of the Board may request the Mediation Board to appoint such neutral person and upon receipt of such request, the Mediation Board

shall promptly make such appointment.

(2) A request for the appointment of a neutral under paragraph (b) of this section or this paragraph (c) shall

(i) . . .

(ii) *Define and list the proposed specific issues or disputes to be heard.* (Emphasis added.)

We hold that the neutral member of the Board is authorized to participate in the resolution of the case on the merits as well as on the jurisdictional and procedural issues.

## DAMAGES

 The arbitration award merely states "Claim sustained" and does not address the question of the amount of recoverable damages. During the period covered by the arbitration award, Blackett would have earned $23,889.99 as an extra relief yardmaster. He in fact earned $23,414.16 during that period while working as a switchman for the plaintiff. The defendants claim they are entitled to the full $23,889.99 while the plaintiff claims that it is only liable for $475.83, the difference between Blackett's actual earnings as a switchman and what he would have earned as a yardmaster. Admittedly, Blackett could not have worked as both a switchman and a yardmaster at the same time and thus have earned wages as both a yardmaster and a switchman during the time period involved.

Originally arbitration awards were binding upon the parties to the arbitration except insofar as monetary damages were awarded. See 45 U.S.C. § 153, First (m) enacted as Act of June 21, 1934, ch. 691, § 3, 48 Stat. 1189. At that time the District Court could make *de novo* findings on the issue of damages. However, on June 20, 1966, 45 U.S.C. § 153 was amended by Pub. L. No. 89–456, §§ 1–2, 80 Stat. 208–210 which made monetary awards of the arbitration panel also conclusive on the parties. See also *Brotherhood of Railroad Trainmen v.*

*Denver and Rio Grande Western Railroad Co.,* 370 F.2d 833, 836 (10th Cir. 1966). But these changes still left open the question of the proper role of the Court when the award clearly states that monetary damages are recoverable without specifying the exact amount.

Two questions are presented: first, whether the District Court has the authority to determine the damages and second, if so, whether the damages should be mitigated.

With respect to the first question, several cases have held that where damages are not specified, the award is not "final", 45 U.S.C. § 153, First (m), and therefore must be remanded to the Public Law Board for failure to comply with the requirements of the act, 45 U.S.C. § 153, First (q). *Brotherhood of Railway Carmen v. St. Louis-San Francisco Railway Co.,* 334 F. Supp. 764 (W.D.Mo. 1971); *Brotherhood of Railroad Signalmen v. Chicago, Milwaukee, St. Paul and Pacific Railroad Co.,* 284 F. Supp. 401 (N.D.Ill. 1968). Other courts have independently determined the issue of damages. *Sweeney v. Florida East Coast Railway Co.,* 389 F.2d 113 (5th Cir. 1968) holds at 115:

"We find no judicial authority for the proposition that it is not a proper function of the district court, when a suit is filed to enforce this award, to determine what actual dollars and cents the employee is entitled to under such an award by the Adjustment Board."

And at 117 the opinion continues:

". . . the elimination of the right theretofore existing [before 1966] to appeal from a money award does not deprive the federal district court of jurisdiction to determine how much is to be paid when a money award is made . . . for 'all time lost.'"

See also *Hanson v. Chesapeake and Ohio Railway Co.,* 412 F.2d 631 (4th Cir. 1969); *Kansas City Southern Railway Co. v. Brotherhood of Railroad Trainmen,* 305 F. Supp. 1142 (W.D.Mo. 1969).

These cases are not totally irreconcilable. Where determination of damages by the District Court leads to an examination of the merits of the claim, an interpretation of the collective bargaining agreement or other matters where the expertise of a labor arbitrator might be desirable, remand may be appropriate. *Brotherhood of Railway Carmen, supra,* at 769. However, where as in this case determination of damages does not touch on matters beyond the jurisdiction and competence of the Court, then the Court should find the damages itself and avoid the delay resulting from a remand. *Sweeney, supra; Hanson, supra; Kansas City Southern Railway, supra.*

On the second question we hold the recoverable damages are the difference between the wages for the position he was denied (extra relief yardmaster) and the wages he received for the position he actually held (switchman). The Courts which have ruled on this issue have consistently held that benefits conferred by the employer (as opposed to a third party) are deductible. *Raabe v. Florida East Coast Railway Co.,* 259 F.Supp. 351 (M.D.Fla. 1966); *Mitchell v. Gulf, Mobile and Ohio Railway Co.,* 91 F. Supp. 175 (N.D.Ala. 1950); *Cook v. Des Moines Union Railway Co.,* 16 F. Supp. 810 (S.D.Iowa 1936). In *Brotherhood of Railroad Trainmen v. Denver and Rio Grande Western Railroad Co.,* 338 F.2d 407, 409–410 (1964), the Tenth Circuit took the same view:

> "We conclude that the District Court correctly determined that the instant case is governed by the general law of damages relating to contracts; that one injured by breach of an employment contract is limited to the amount he would have earned under the contract less such sums as he in fact earned."

It should be noted, however, that *Raabe, Mitchell, Cook* and *Brotherhood of Railroad Trainmen* were all decided prior to the 1966 Amendments to the Railway Labor Act when the damage aspect of the awards was not binding. Even though they may no longer be controlling authority of the issue, they nevertheless remain highly persuasive. Consequently, this Court finds that the defendants are entitled to recover the difference between what Blackett should have earned and what he actually earned which is $475.83.

## ATTORNEY'S FEES

 45 U.S.C. § 153, First (p) provides that "if the petitioner shall finally prevail he shall be allowed a reasonable attorney's fee, to be taxed and collected as part of the costs of the suit." The size of the fee lies within the competence and sound discretion of the Court. *United Transportation Union v. Soo Line Railroad Co.,* 457 F.2d 285, 288–289 (7th Cir. 1972). In this case, the defendants' counterclaim for enforcement of the award sought $23,899.99 in damages. Although the defendants won on the issue of liability, they lost on the issue which was central to their case and which was the primary reason for this litigation, namely, whether recoverable damages were or were not measured by the difference between what Blackett received and what he would have received if he had been permitted to work as a yardmaster. As a consequence, defendants have recovered only $475.83 in damages. Since the defendants lost on their most substantial claim, it would be inappropriate to award the $5,000–$6,000 in fees claimed by the defendants' attorneys. The Court finds that in the circumstances of this case, a proper fee should not exceed the defendants' recovery. Thus, an attorney's fee of $475.00 should be allowed to be taxed and collected against the plaintiff as part of the costs of the suit.

It is ordered that Award No. 22 of Public Law Board 862 rendered May 22, 1973, in Case No. 131 is approved and is final and binding upon the parties;

That the defendants have and recover judgment against the plaintiff on their counterclaim in the amount of $475.83 and interest thereon at the rate of 6%

per annum from August 21, 1973, the date of the filing of the counterclaim, to this date in the amount of $54.27;

That defendants have judgment against the plaintiff for defendants' attorney's fees in the amount of $475.00, together with other costs of the defendants to be taxed by the Clerk of the Court upon the filing of a bill of costs.