**BROTHERHOOD OF RAILWAY, AIR-LINE AND STEAMSHIP CLERKS, FREIGHT HANDLERS, EXPRESS AND STATION EMPLOYEES, Appellant,**

v.

**SPECIAL BOARD OF ADJUSTMENT NO. 605, and the Atchison, Topeka and Santa Fe Railway Company, Appellees.**

**No. 17184.**

United States Court of Appeals
Seventh Circuit.

May 8, 1969.

Judith A. Lonnquist, Chicago, Ill., William J. Hickey, Washington, D. C., Jacobs & Gore, Chicago, Ill., Mulholland, Hickey & Lyman, Washington, D. C., William J. Donlon, General Counsel Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employes, Cincinnati, Ohio, Albert Gore, Chicago, Ill., Edward J. Hickey, Jr., Washington, D. C., for appellant.

S. R. Brittingham, Jr., C. George Niebank, Jr., John P. Frestel, Jr., Leon S. Conlon, Chicago, Ill., for appellees.

Before DUFFY, Senior Circuit Judge, and KILEY and SWYGERT, Circuit Judges.

SWYGERT, Circuit Judge.

This appeal presents the issue whether an award of a board of arbitration created by private agreement between parties subject to the Railway Labor Act is to be accorded judicial review in a federal court on the same basis as provided in the Act for the awards of statutory arbitration boards. In light of our holding with respect to this jurisdictional question, we need not reach the subsidiary issue whether the arbitration award in this case should be set aside.

Petitioner, the Brotherhood of Railway, Airline and Steamship Clerks,

Freight Handlers, Express and Station Employees, filed a petition in the district court seeking review of an award of a board of arbitration created by contract and designated Special Board of Adjustment No. 605. The petition alleged that the award had been entered pursuant to the provisions of the Railway Labor Act, 45 U.S.C. §§ 151–188 and that jurisdiction to review was conferred upon the court by Section 3, First (q) of the Act, 45 U.S.C. § 153, First (q).

The district court entered summary judgment in favor of the defendant, The Atchison, Topeka and Santa Fe Railway Company. Brotherhood of Railway Clerks v. Special Bd. of Adj. No. 605, 286 F.Supp. 397 (N.D.Ill.1968). The court held that it was without jurisdiction to review the award in question and that even if it had jurisdiction, the pleadings failed to establish any sufficient ground for review.

The controversy which gave rise to the disputed arbitration proceeding grew out of a complicated bargaining history. In July 1944, National Carloading Corporation, a freight forwarder, located its loading operations on a site served by the Chicago and North Western Railway Company. National's employees doing freight handling work were transferred at that time to C & N W's payroll and a C & N W-National joint seniority roster was established which maintained employees' seniority rights with both companies.

Although this arrangement prevailed during the ensuing years, in 1956, after it became known that National contemplated another transfer from the C & N W facility to a warehouse owned by Santa Fe, the Brotherhood demanded that Santa Fe enter into a joint seniority roster agreement similar to that which had been in effect with C & N W. Consequently, Santa Fe, National, and the Brotherhood entered into a tripartite agreement on February 5, 1957 whereby the parties stipulated that the freight handlers then on the C & N W payroll would be transferred to Santa Fe with-

out loss of seniority. The February 5 agreement further provided:

6. The National Carloading Corporation agrees that in the event the work transferred from the C & N W to the Santa Fe is returned to National, the latter will take over the employees then employed by Santa Fe in the combined National-Santa Fe seniority district without loss of their seniority.

Subsequently, the freight handlers on the C & N W payroll were transferred to Santa Fe and performed National's dock work without incident until mid-1965, when National announced that it intended to exercise its right to resume supervision of this work itself on August 1, 1965. Employees who had been performing National's freight handling were informed that they could submit new employment applications and be considered for employment. When National did not find it necessary to employ all the freight handlers previously carried on the joint Santa Fe-National seniority roster, the Brotherhood claimed that those not employed by National were still technically employed by Santa Fe and thus entitled to the benefits of an industry-wide job protection agreement which had been executed on February 7, 1965 by the National Railway Labor Conference, Santa Fe's bargaining agent, and the Employees' National Conference Committee, which represented the Brotherhood. On the basis of a provision in the February 7 agreement relating to job stabilization benefits for "protected employees," the Brotherhood asserted that the employees who had not found employment with National were to be retained by Santa Fe in their jobs and protected from loss of earnings "until retired, discharged for cause, or otherwise removed by natural attrition."

Santa Fe contended that its employment relationship with the freight handlers in question had been severed by operation of paragraph 6 of the February 5, 1957 tripartite agreement by virtue of the fact that the dock work involved had been taken back by National

and hence the freight handlers were not "protected employees" within the definition of the February 7 agreement.

Because the parties were unable to resolve their dispute, the Brotherhood submitted it to the "Disputes Committee" as provided in the February 7, 1965 Agreement.[1] In its submission to the committee created in response to the request, designated "Special Board of Adjustment No. 605," the Brotherhood advanced two specific questions:

(1) Are Santa Fe employees with a seniority date of October 1, 1962 and earlier, who prior to August 1, 1965, were engaged in the handling of National Carloading Corporation freight at the Corwith House #1, Chicago, Illinois, entitled to protection under the February 7, 1965 Stabilization Agreement?

(2) If so, shall employees qualifying for protection thereunder be returned to the payroll of the Santa Fe and compensated according to the provisions of Article IV of the February 7, 1965 Stabilization Agreement?

Board No. 605 considered the questions and concluded from the two collective bargaining agreements presented, the tripartite agreement and the February 7 Agreement, that employment of the bargaining unit had shifted from Santa Fe to National when National took back its freight handling work. Thus it found that the employees were not "protected employees" within the meaning of the February 7 Agreement and were not entitled to benefits.

Thereafter, the Brotherhood filed a petition for review in the district court which is the subject of this appeal. The

district court entered summary judgment for the defendant Santa Fe. We affirm the judgment.

 It is our opinion that the district court correctly determined that it did not have jurisdiction to review the claims presented. The first provision of the Railway Labor Act relied upon by the Brotherhood to press its claim of jurisdiction is Section 3, First (q), 45 U.S.C. § 153, First (q). That provision was part of a package of amendments to Section 3 enacted by Congress in 1966. The two basic objectives behind adoption of these amendments were (1) to eliminate the backlog of claims pending before the National Railroad Adjustment Board, and (2) to provide equal opportunity for limited judicial review of NRAB awards. 1966 U.S.Code Cong. & Admin.News, pp. 2285-2286. The part of Section 3, First (q), upon which the Brotherhood relies reads:

If any employee or group of employees * * * is aggrieved by the failure of any division of the Adjustment Board to make an award in a dispute referred to it, or is aggrieved by any of the terms of an award * * * then such employee or group of employees * * * may file in any United States district court in which a petition under paragraph (p) could be filed, a petition for review of the division's order. * * * The court shall have jurisdiction to affirm the order of the division or to set it aside, in whole or in part, or it may remand the proceeding to the division for such further action as it may direct. On such review, the findings and order of the division shall be conclusive on the

---

1. Article VII, Section 1 of the February 7 Agreement provides:

Any dispute involving the interpretation or application of any of the terms of this agreement and not settled on the carrier may be referred by either party to the dispute for decision to a committee consisting of two members of the Carriers' Conference Committees signatory to this agreement, two members of the Employees' National Conference Committee signatory to this agreement, and a referee to be selected

as hereinafter provided. The referee selected shall preside at the meetings of the committee and act as chairman of the committee. A majority vote of the partisan members of the committee shall be necessary to decide a dispute, provided that if such partisan members are unable to reach a decision, the dispute shall be decided by the referee. Decisions so arrived at shall be final and binding upon the parties to the dispute.

parties, except that the order of the division may be set aside, in whole or in part, or remanded to the division, for failure of the division to comply with the requirements of this Act, for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order.

The district court properly concluded that only awards of regular divisions of the NRAB are within the purview of the section and that consequently its jurisdiction to review an award of the "Disputes Committee" created under the February 7 Agreement is precluded.

Section 3, Second of the Act, which, in pertinent part, provides for the creation of "special boards of adjustment" to consider and decide grievance-type disputes which otherwise could be submitted to the NRAB is inapplicable to the instant case. That section, even if otherwise applicable, cannot be the basis of jurisdiction here since it vests authority in the district courts only to enforce but not to review awards of special boards.

■ The plain wording of Section 3, First (q) relates only to statutory boards. The Special Adjustment Board No. 605 is not a statutory board at all but solely the product of a contract between private parties. Board No. 605 is a common law board of arbitration established by parties who happened otherwise to be subject to the Act. Not every form of arbitration in the railroad industry is subject to the review provisions of Section 3 of the Railway Labor Act. Even though the creation of Board No. 605 was sanctioned by the Act, it was not a statutory board and therefore not subject to the review provision of Section 3, First (q).

The second jurisdictional basis proposed is that this cause arises under 28 U.S.C. §§ 1331 and 1337. As authority, petitioner calls our attention to the Supreme Court's decision in International Association of Machinists v. Central Airlines, Inc., 372 U.S. 682, 83 S.Ct. 956,

10 L.Ed.2d 67 (1963). That this case is inapplicable to the dispute before us is apparent if we keep in mind the fact that Board No. 605 is a contractual and not a statutory board. In *Central Airlines*, the parties agreed to establish a system board of adjustment to resolve grievance disputes. The Supreme Court, in ruling that awards of an airline system board of adjustment can be enforced in a federal court, made it clear that agreements to submit matters to these boards were not permissible but mandatory. The court observed:

The parties were placed under the statutory duty of establishing and utilizing system, group, or regional boards of adjustment for the purpose of adjusting and deciding disputes arising under existing contracts. *Id.* at 686, 83 S.Ct. at 959.

In the case at bar, neither party was directed by the Act to establish the "Disputes Committee." This committee was created by contract and was not a statutory board like that involved in *Central Airlines*. For the same reason, the two other cases cited by the Brotherhood involving statutory boards are inapposite. Northwest Airlines, Inc. v. Air Line Pilots Association, 373 F.2d 136 (8th Cir. 1967), and Dominguez v. National Airlines, Inc., 279 F.Supp. 392 (S.D.N.Y. 1968).

There is no overriding equitable ground for finding a source of jurisdiction here. The result of this case cuts both ways, neither labor organizations nor railroads can petition a federal court to review a private arbitration board's award.

■ Likewise the decision here is consistent with the national labor policy of avoiding court review of the merits of arbitration awards rendered under collective bargaining agreements. United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960).

The decision of the district court is affirmed.