**BROTHERHOOD OF RAILWAY CARMEN, Plaintiff,**

v.

**ST. LOUIS–SAN FRANCISCO RAILWAY COMPANY, Defendant.**

**Civ. A. Nos. 19373–3, 19374–3.**

United States District Court,
W. D. Missouri, W. D.

July 26, 1971.

---

7. Judicial Regulation of Union Elections, Summers, 70 Yale L.J. 1221, 1256–1257 (1961).

William J. Hickey, Washington, D. C., Robert D. Schaff and Ernest Hubbell, Kansas City, Mo., for plaintiff.

Edward W. Mullen, Kansas City, Mo., Paul Moody, Asst. Gen. Counsel, Frisco Railroad Co., St. Louis, Mo., for defendant.

### JUDGMENT REMANDING AWARDS TO THE SPECIAL BOARD OF ADJUSTMENT NO. 570

WILLIAM H. BECKER, Chief Judge.

These are actions to enforce awards of the Special Board of Adjustment No. 570 issued pursuant to the provisions of the Railway Labor Act, Section 151 et seq., Title 45, United States Code. Civil Action No. 19374-3 has recently been transferred to this division after having been originally filed in Division 1 of this District.

In the complaint in Civil Action No. 19373-3, it is alleged as follows:

"At all times material herein, there has been in effect a collective bargaining contract dated September 25, 1964, between RED [Railway Employes' Department, AFL-CIO] (on behalf of BRC [Brotherhood of Railway Carmen]) and Frisco executed pursuant to the provisions of the Act providing certain protection to BRC members employed by Frisco as to their rates of pay, rules and working conditions. As set forth in more detail by Appendix A hereto, the Agreement provides 'protective benefits' for employees of Frisco who are 'displaced' or 'deprived' of employment as a result of changes in the operations of the railroad due to the causes listed in the Agreement. Thus employees who are deprived of employment or placed in a worse position in respect to compensation and rules governing working conditions receive certain monetary benefits if such adverse action resulted from changes in the operations of the Railroad such as abandonment, discontinuance for six months or more, or consolidation of facilities or services or portions thereof, in addition to other specified changes. Specifically the Agreement provides that if an employee is required as a result of a change in operations of the Railroad to accept through the exercise of his seniority a job providing less compensation, said employee is entitled to a 'displacement allowance' calculated to be the amount necessary to continue his compensation at the rate he received in the job from which he was 'displaced' as a result of a change in the operations of the Frisco. The Agreement also provides that if an employee is unable through the exercise of his seniority to obtain a job for which he is qualified in the craft or class (e. g. carmen) in which he is employed, then such employee would receive a 'dismissal allowance' constituting separation pay in an amount related to his prior record of employ-

ment with the Railroad. In addition the Agreement provides that the Railroad is required to give at least (60) days (ninety (90) days in cases that require a change in the employee's residence) written notice of the abolition of jobs as a result of any of the specified changes in operations by the Railroad."

The Award of the Special Board of Adjustment, which is attached to the complaint herein, recites that the following claim was filed with the Board:

"That under the Agreement of September 25, 1964, the Carrier improper[ly] deal[t] with and thereby damaged passenger car inspector S. R. McDaniel, Car Inspector (Up-Graded) H. V. Castillo, Car Inspector J. A. Stout, Coach Cleaner J. W. Walker, and Coach Cleaner R. E. Hodge, all of Oklahoma City, Oklahoma, Coach Cleaner Richard Brown of Tulsa, Oklahoma and Passenger Carmen J. W. Holdren, Coach Cleaner William M. Rossner, and Coach Cleaner Theordore A. Kemp, all of St. Louis, Missouri, when Trains No. 1 and No. 2 East and West between Oklahoma City, Oklahoma and St. Louis, Missouri were discontinued and abandoned on or about May 13, 1967, resulting in the furloughing of the Coach Cleaners mentioned, furloughing of the Up-Graded Car Inspector and the displacing of the other carmen to lower paying positions. Further, the dispute is that the Carrier was in violation of Article I, Section 4 of the September 25, 1964 Agreement when it failed to give (60) (ninety (90) days in cases that will require a change of employees' residence) days written notice of the abolition of jobs with this written notice posted on a bulletin board convenient to the interested employees and a certified mail notice sent to the General Chairman of such interested employees."

The Finding of the Special Adjustment Board was that the "claim [was] sustained" thereby upholding the position "that the Claimants are entitled to Arti-

cle I benefits since they were adversely affected by the discontinuance of Trains No. 1 and 2 on May 13, 1967."

Under the applicable statute, Section 153, First (q), Title 45, United States Code:

"The court shall have jurisdiction to affirm the order of the division or to set it aside, in whole or in part, or it may remand the proceeding to the division for such further action as it may direct. On such review, the findings and order of the division shall be conclusive on the parties, except that the order of the division may be set aside, in whole or in part, or remanded to the division for failure of the division to comply with the requirements of this chapter, for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order. The judgment of the court shall be subject to review as provided in sections 1291 and 1254 of Title 28."

It has been held under this provision that the findings and award of the Board must be definite and certain in order to be final, binding and conclusive on the parties. Brotherhood of Railroad Signalmen v. Chicago, Milwaukee, St. Paul & Pacific Railroad Company (N.D.Ill.) 284 F.Supp. 401, 407. Further, in Gunther v. San Diego & Arizona E. R. Co., 382 U.S. 257, 86 S.Ct. 368, 15 L.Ed. 2d 308, 313, it was held that the federal district court, "has power under the Act to determine the size of the money award" but is bound by the Board's findings on the merits of the claim. See also Hanson v. Chesapeake & Ohio Railway Company, 384 U.S. 211, 86 S.Ct. 1464, 16 L.Ed.2d 481. In the award attached to the complaint in this case, it does not appear what meaning "furlough" carries within the terms of the applicable Agreement in order to permit the Court to make an accurate determination of the size of the award which is due the Coach Cleaners and the Up-Graded Car Inspector. With respect to the others, it is unclear whether they should

be allowed the "dismissal allowance" in addition to the "displacement" allowance. The period of time for which allowances are due is not given in either case. With respect to the carmen "displaced" but not "dismissed" through inability to obtain a job for which they are qualified, the rates of pay at which they are now working following their displacement is not specified. The Court could not therefore make an award of damages and compute the damages without making some findings involving the merits of the claims. It appeared to the Court, therefore, on initial examination of the complaint, that this cause should be remanded to the Board for further findings. Therefore, on May 25, 1971, the Court entered its order stating as follows:

"[T]he United States Supreme Court, in Transportation Communication Employees Union v. Union Pacific Railroad, 385 U.S. 157, 87 S.Ct. 369, 17 L.Ed.2d 264, affirmed that the 1966 amendment to the Act meant that·the district court could remand the award for clarification in its discretion. See also Laday v. Chicago, Milwaukee, St. Paul & Pacific R. Co. (C.A.7) 422 F.2d 1168, 1170, n. 2; Brotherhood of Railroad Signalmen v. Chicago, Milwaukee, St. Paul & Pac. R. Co., supra. In addition to the foregoing, the Board should additionally specify the amount of the award to be granted to each individual. [Transportation-Communication Employees Union formerly The Order of Railroad Telegraphers] v. Atchison, Topeka and Santa Fe Railway Company (W.D.Mo.) Civil Action No. 14591–3, June 23, 1969. This would expedite the efficient administration of justice and would perhaps make it unnecessary to invoke the jurisdiction in every case of this type in order to obtain a simple arithmetical calculation of the award due.

"For the foregoing reasons, it is

"ORDERED that petitioners show cause in writing within 10 days of the date of entry of this order why this cause should not be remanded to the Special Adjustment Board for clarification of the award."

In response to the show cause order, plaintiff responded on June 14, 1971, that it did not object to a remand of these actions to the Special Adjustment Board if this Court retained jurisdiction of them. Retention of jurisdiction by this Court, plaintiff contended, is necessary to insure that the applicable statute of limitations, Section 153, First (r), Title 45, United States Code, will not run while the cases are in the posture of having been remanded to the Adjustment Board. The above-cited applicable statute of limitations reads as follows:

"All actions at law based upon the provisions of this section shall be begun within two years from the time the cause of action accrues under the award of the division of the Adjustment Board, and not after."

■ "Award," however, as used in that statute, means "enforceable award." See Brotherhood of Railroad Signalmen v. Chicago, Milwaukee, St. Paul & Pacific Railroad, supra, in which it was noted that the predecessor statute of Section 153, supra, at subsection (p) thereof, made the award of an adjustment board prima facie evidence on the merits of a claim in an enforcement proceeding in a federal court, while the 1966 amendments to that statute made the award conclusive and binding on the Court. The Court accordingly reasoned:

"It is inescapable to conclude that if findings, awards, and orders must be certain and definite in order to be used as prima facie evidence, they must surely meet this requirement in order to be final, binding, and conclusive on the parties." 284 F.Supp. at 407.

In Transportation-Communication Employees Union v. Union Pacific Railroad, 385 U.S. 157, 87 S.Ct. 369, 17 L.Ed.2d 264, the United States Supreme Court held that an order of the National Railway Adjustment Board which was not based upon a consideration of all relevant issues could be remanded to the

Board, apparently without regard to the statute of limitations in Section 153, *supra*, because of the absence of an enforceable award.

 Further, this case is different from Sweeney v. Florida East Coast Ry. Company (C.A.5) 389 F.2d 113, in that, in that case, the award was complete in respect of the merits of the claim. The federal court whose jurisdiction is invoked to enforce the award may determine (or redetermine, as the case may be) the merits of the issue of damages, but the merits of the issue of liability, as found by the National Railway Adjustment Board, are binding and conclusive. Gunther v. San Diego & Arizona E. R. Co., *supra*. In the claims before the Court herein, the National Railway Adjustment Board has not, in either case, stated the precise species of relief under the contract which each of the claimants is entitled to. In Civil Action No. 19373–3, the claim therein litigated does not state the provisions of the contract under which the awards are to be computed. These are considerations necessarily involving the merits of the claims.

In Civil Action No. 19374–3, in the second class (subsection (b) of the claim) of claimants whose claims have been sustained by the Special Adjustment Board, both those who have been furloughed and those who have suffered a pay decrease are classed together, in the following manner, without any indication of which persons have been furloughed and which have suffered a decrease in rank or pay. The claim in that case reads as follows:

STATEMENT 1. OF CLAIM: That under the Agreement of September 25, 1964, Carrier improperly dealt with and thereby damaged the following employes when it discontinued service on Passenger Trains No. 101 and 102 between Kansas City, Missouri, and Birmingham, Alabama, on or about December 8, 1967, which act constituted a total abandonment of all passenger service:

(a) Employes whose jobs were abolished and said employes furloughed:

| Name | Seniority Date | Location |
|---|---|---|
| Coach Cleaner C. L. Griffin | 7–31–43 | Kansas City, Mo. |
| Coach Cleaner R. M. Parker | 3–21–44 | Kansas City, Mo. |
| Coach Cleaner S. A. East | 1–13–45 | Kansas City, Mo. |
| Passenger Car Painter John F. Denton | 6– 1–56 | Springfield, Mo. |
| Passenger Car Painter E. Aubrecht | 1–22–64 | Springfield, Mo. |
| Coach Cleaner Mary Alice (Agee) Odom | 4–24–43 | Memphis, Tenn. |

(b) Employes whose jobs were abolished, resulting in their furlough or exercising seniority to a lower-rated position: Carmen M. D. Sanchez and Clifton Wood, Coach Cleaner Earline R. Burdett, all of Kansas City, Missouri; Passenger Car Repairmen J. V. Farrell and C. A. Schmitt, Carmen W. H. Henson and W. G. Jackson, Passenger Car Painters L. Harrison and R. Ball, Passenger Car Inspectors E. W. Ward, Keith Holman and Frank Aldred, and Carmen Helper T. H. Schell, all of Springfield, Missouri; Lead Passenger Car Inspector E. C. Brown, Passenger Car Inspector C. Y. Jackson, Regular Relief Passenger Car Inspector L. W. Meadows, all of Memphis, Tennessee.

(c) Employes who were displaced by employes listed in (b) above, resulting in their furlough: Car Inspector Daryl Hornbuckle, Lead Carman Welder B. L. Gilmore, Carman James T. Griffith, all of Springfield, Missouri; Carmen W. R. Pierce, W. E. Taylor, R. L. Perkins, J. M. Phillips, W. P. Franklin, P. D. Kinnevan and J. Tyler, all of Kansas City, Missouri; Coach Cleaners Bessie L. Reynold, Mildred Rogers and Lawrence Jones, all of Memphis, Tennessee.

(2) That the Carrier violated Article I, Section 4, of the September 25, 1964, Agreement, when they failed to give sixty (60) (ninety (90) days in cases that will require a change of employe's residence) days' written notice of the abolition of jobs, with this written notice posted on a bulletin board convenient to the interested employes and a certified mail notice sent to the General Chairman of such interested employes.

The essential findings and award of the Board provide as follows:

The following employees were deprived of employment or placed in a worse position, and hence are entitled to the protective benefits and the sixty-day notice:

Kansas City: C. L. Griffin, R. M. Parker, W. R. Pierce, J. Tyler.

Springfield: E. Aubrecht, R. Ball, J. F. Denton, J. V. Farrell, B. L. Gilmore, J. T. Griffith, L. Harrison, K. Holman, D. Hornbuckle, E. W. Ward.

Memphis: L. W. Meadows.

The Organization alleges that some few Passenger Carmen in Springfield have been placed in the position of Freight Carmen and put at the bottom of a different seniority list. They are not identified, and we cannot judge the merits of that claim. We therefore find that all of the following employees were not deprived of employment or placed in a worse position, and hold that they are therefore not entitled to the protective benefits or the sixty-day notice:

Kansas City: E. R. Burdett, W. P. Franklin, D. D. Kinnevan, R. L. Perkins, J. M. Phillips, M. D. Sanchez, W. E. Taylor, C. Wood.

Springfield: F. Aldred, W. H. Henson, W. G. Jackson, T. H. Schell, C. A. Schmitt.

Memphis: E. C. Brown, C. Y. Jackson.

The Organization contends that five Car Cleaners were working shortly before the discontinuance of the trains, and that their opportunity for further employment has been lost or seriously reduced. The Carrier contends that all of them were furloughed in September, 1965, so that they could not have been affected by this change in operations. Since an employee who had been furloughed might have been recalled and might then be affected by a change in operations, the fact of earlier furlough alone does not necessarily preclude eligibility for the protective benefits. We therefore hold that they are entitled to the protective benefits provided they had some employment with the Carrier after November 8, 1967 (one month before this change in operations) and are entitled to the sixty-day notice provided they held a regular assignment after that date.

### A W A R D

The Board accepts jurisdiction of this case.

Claim sustained with reference to the following Claimants:

Kansas City: C. L. Griffin, R. M. Parker, W. R. Pierce, J. Tyler.
Springfield: E. Aubrecht, R. Ball, J. F. Denton, J. V. Farrell, B. L. Gilmore, J.. T. Griffith, L. Harrison, K. Holman, D. Hornbuckle, E. W. Ward.
Memphis: L. W. Meadows.

Claim sustained with reference to the following claimants, provided they had some employment with the Carrier between November 8 and December 8, 1967:

Kansas City: S. A. East.
Memphis: L. Jones, M. A. Odom, B. L. Reynolds, M. Rogers.

Claim denied with reference to all other Claimants.

■ Again, the meaning of the term "furlough" under the contract is not specified. Nor is the exact measure of decrease in rank nor the former monthly and present monthly salaries of those forced to exercise seniority in lower rated positions given.

Further, with respect to all the claims sustained by the award sought to be reviewed in Civil Action No. 19374–3, their precise nature is identified in the award only by the finding that the claimants are entitled to the "protective provisions" of the contract. According to the contract, its "protective provisions" can apply either to those "deprived of employment" or forced to exercise seniority at a lower pay rate or both.

Clearly, under such findings, the awards are not final, binding or conclusive and are therefore not enforceable in the federal court. Any attempt at enforcement by the federal district court would require the Court to rehear the respective claims on their merits to determine the precise nature of each claim before classifying the claims under the "protective provisions" of the contract. Clearly, such a rehearing on the merits of the claim would violate the fundamental rule that the Special Adjustment Board's finding on the merits is conclusive. § 153, First (p), Title 45, U.S.C. Therefore, the claims herein must be remanded to the special Adjustment Board.

This Court is mindful that in Switchmen's Union of North America v. Clinchfield (E.D.Tenn.) 310 F.Supp. 606, the federal court held that it was without statutory authority to remand an award to a Special Adjustment Board. In that case, the Court stated:

"If this Court were empowered to remand this proceeding to public law board no. 92, that body could doubtless ' * * * with its experience and common sense, handle this entire dispute in a satisfactory manner in a single proceeding. * * * ' [Transportation-Communication Employees Union v. Union Pacific R. Co.], 385 U.S. at 165, 87 S.Ct. at 373, 17 L.Ed.2d at 270[6]. Unfortunately, the Congress did not include as a part of these same amendments an applicability of 45 U.S.C. § 153, first, (m) to 45 U.S.C. § 153, second, authorizing special adjustment boards. So, this Court has no apparent authority to remand this proceeding to public law board no. 92 for clarification."

This reasoning, however, is negated by the literal wording of § 153, Second, Title 45, U.S.C., which provides as follows:

"Compliance with such awards [by special adjustment boards] shall be enforcible by proceedings in the United States district courts in the same manner and subject to the same provisions that apply to proceedings for enforcement of compliance with awards of the Adjustment Board."

Further, to accept the basic proposition of Switchmen's Union of North America v. Clinchfield, *supra*, that § 153 First, Title 45, U.S.C., does not have full

application to awards of a Special Adjustment Board leads to the conclusion that the federal district court does not have jurisdiction to review the award of a special Adjustment Board. This was the conclusion in Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers Express and Station Employees v. Special Board of Adjustment No. 605 (C.A.7) 410 F.2d 520, where it was said:

"The district court properly concluded that only awards of regular divisions of the NRAB are within the purview of the section and that consequently its jurisdiction to review an award of the 'Disputes Committee' created under the February 7 Agreement is precluded.

"Section 3, Second of the Act, which, in pertinent part, provides for the creation of 'special boards of adjustment' to consider and decide grievance-type disputes which otherwise could be submitted to the NRAB is inapplicable to the instant case. That section, even if otherwise applicable, cannot be the basis of jurisdiction here since it vests authority in the district courts only to enforce but not to review awards of special boards." 410 F.2d at 523.

Further, in Baltimore & Annapolis R. Co. v. National Mediation Board (D.Md.) 321 F.Supp. 51, the Court reaffirmed the proposition that an award of a Special Adjustment Board is to be treated by the federal courts in all respects as an award of the National Railway Adjustment Board would be treated. In that case, it was said:

"Consistent with the Congressional purpose in enacting section 153, Second, as evidenced by the legislative history, 2 U.S.Code Cong. & Admin. News, pp. 2285, 2286 (1966), and reading the sections of the statute as a whole, Northwest Airlines, Inc. v. Air Line Pilots Ass'n, Internat'l, 373 F.2d 136, 142 (8th Cir. 1967), the court is compelled to the conclusion that judicial review of the awards of such boards is to be coextensive with that accorded to the courts in reviewing awards of the Adjustment Board. Cf. Slagley v. Illinois Central Railroad Co., 397 F.2d 546, 550–551 (7th Cir. 1968). The contrary conclusion, intimated by some courts, Brotherhood of Ry., Airline & S. Clerks, etc. v. Special Board of Adj. No. 605, 286 F.Supp. 397 (N.D. Ill.1968), aff'd, 410 F.2d 520 (7th Cir. 1969), that there is to be no judicial review of the awards of special boards of adjustment, would raise serious constitutional questions. Cf. International Ass'n of Mach. & Aerospace Wkrs. A. F. L.-C. I. O. v. National Med. Bd., 138 U.S.App.D.C. 96, 425 F.2d 527, 537 (D.C.Cir. 1970)." 321 F. Supp. at 55–56

Further, jurisdiction has been determined proper in Transportation-Communications Division-Brotherhood of Ry., Airline and Steamship Clerks, Freight Handlers, Exp. and Station Employees, v. St. Louis-San Francisco Ry. Co. (C.A. 8) 419 F.2d 933. In that case, it was held that an order remanding to the special board for further determinations in respect to the award is not a final, appealable order. Subsequently, in Barrett v. Manufacturers Railway Company (E. D.Mo.) 326 F.Supp. 639, 643, 644, it was stated:

"While the wording of Section 153, Second appears to allow judicial action only to the extent allowed on compliance proceedings under 153, First (p) (allowing actions for enforcement of awards of the NRAB), judicially the extent of review of awards of Boards established under 153, Second, has been construed to be equal to that provided for review of awards of the Adjustment Board under 153, First (p) and (q). Transportation-Communication Employees Union et al. v. St. Louis-San Francisco Railway Company, 296 F.Supp. 507 (E.D.Mo.1968). The Court of Appeals for the Eighth Circuit in dismissing the appeal in the last cited case, upheld the jurisdiction of the District Court to remand the dispute to a Special Board. Transportation-Communication Division-Brotherhood, etc. v. St. Louis-San Francisco Ry. Co., 419 F.2d 933, 935 (1969)."

For this additional reason, there is no problem in this case of the running of the statute of limitations. Under the holdings in Switchmen's Union of North America v. Clinchfield, *supra*, and Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers and Station Employees v. Special Board of Adjustment No. 605, *supra*, this Court would be compelled to dismiss these cases outright and the claimants would be left to whatever administrative or contractual remedies they might have before the Special Board of Adjustment to attempt to have the Board state with particularity the nature of each individual's claim sustained by it and which of the "protective provisions" of the contract are applicable in each case. Then, by application of the clear findings on their merits, the parties might be able to agree on the measure and amount of damages provided for by the contract.

Under the proper construction of § 153, *supra*, however, the Court is empowered to remand for the same purpose. Once the Special Board of Adjustment has described the individual claims sustained by it, with special reference to the applicable contract, with enough particularity that the Court may determine the damages and enforce the award, relief may again be sought in this Court, with running of the statute of limitations under § 153, First, (r), Title 45, U.S.C., being based upon the new, enforceable awards rather than the unenforceable awards sought to be enforced in this action. See Transportation-Communication Employees Union v. Atchison, Topeka & Santa Fe Railway, *supra*. But the Board, to expedite justice, should also compute the awards.

For the foregoing reasons, it is

Ordered that the awards made by the Special Adjustment Board in the above cases be, and they hereby are, remanded to the Special Adjustment Board for clarification as described above.[1]

---

1. The dismissal is without prejudice to the right of plaintiff to initiate a new action based upon an award in accordance with the order of remand finding the amounts to which each aggrieved party is entitled.