EMPLOYEES PROTECTIVE ASSOCI-
ATION et al., Appellants,

v.

NORFOLK AND WESTERN RAIL-
WAY COMPANY et al., Appellees.

No. 74–1577.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 6, 1974.

Decided Feb. 24, 1975.

William G. Anderson, Roanoke, Va., and George V. Gardner, Washington, D. C. (Gardner & Armbrister, Washington, D. C., on brief), for appellants.

Harold A. Ross, Cleveland, Ohio (Ross & Kraushaar Co., Cleveland, Ohio, and G. Marshall Mundy, Roanoke, Va., on brief), for appellee Brotherhood of Locomotive Engineers.

Martin M. Lucente, Chicago, Ill. (William B. Poff, Bayard E. Harris, Woods, Rogers, Muse, Walker & Thornton, Roanoke, Va., and Sidley & Austin, Chicago, Ill., on brief), for appellee Norfolk and Western Railway Co.

Before BOREMAN, Senior Circuit Judge, WIDENER, Circuit Judge, and THOMSEN, Senior District Judge.

THOMSEN, Senior District Judge:

Appellants (plaintiffs), seventy-two locomotive engineers employed by the Norfolk and Western Railway Company (N&W) and an ad hoc unincorporated association, brought suit in the district court against N&W, the Brotherhood of Locomotive Engineers (BLE)[1] and Special Board of Adjustment No. 813. Plaintiffs challenged an award of Board No. 813 on the ground that it had acted outside the scope of its jurisdiction. They claimed that federal jurisdiction for such limited review of the award exists under the Railway Labor Act, 45 U.S.C. § 151 et seq., particularly § 153 First (q) and Second, and also under 28 U.S.C. § 1337,[2] as an action arising under a law regulating commerce, namely, the Railway Labor Act, or the Interstate Commerce Act, 49 U.S.C. § 5, or both. The district court concluded that it had no jurisdiction to review the award and dismissed the suit.

**I**

The dispute stems from the merger of the Virginian Railway Company (Virginian) into N&W. Application for approval of that merger was filed with the Interstate Commerce Commission (ICC) in April 1959 and was granted in October 1959. In anticipation of such approval the two carriers, in June 1959, entered into an Agreement for Protection of Employees with the Railway Labor Executives Association (RLEA), acting on behalf of its constituent organizations, which included BLE. The pertinent provision of that agreement is set out in the margin.[3].

---

1. BLE is the certified bargaining representative for locomotive engineers on N&W. Most of the plaintiffs are members of BLE, although some are members of the United Transportation Union.

2. 28 U.S.C. § 1337:

"The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies."

3. "(a) On the effective date of the said merger, the Norfolk and Western will take into its employment all employees of the Virginian who are willing to accept such employment, and none of the present employees of either of said carriers shall be deprived of employment or placed in a worse position with respect to compensation at any time during his employment because of the merger of said railroads or any program of economies undertaken by the Norfolk & Western because of the merger including, but not specifically limited to, . . . changes pursuant to any integration of employment forces, or other such economies or changes resulting from the merger; provided, however, that all presently working employees of the Virginian and the Norfolk & Western shall be entitled to the foregoing preservation of employment and, provided further, that in the event that the employee organizations at their option elect not to have presently working employees of either railroad occupy available positions on the merged railroad through integration of seniority rosters without liability to furloughed employees who may be affected by such integration of seniority rosters, then, in that event, said employees shall be entitled only to compensatory benefits and other protection afforded by the terms of the Washington Job Protection Agreement in lieu of preservation of their employment."

In 1962 N&W sought ICC approval of a second merger, with the New York, Chicago and St. Louis Railroad (Nickel Plate). Since the 1959 Agreement would not protect N&W employees (including former Virginian employees) from consequences attributable to the Nickel Plate merger, RLEA and the two carriers entered into an Agreement for Protection of Employees, which included an arbitration provision, set out in the margin.[4]

As a result of the 1962 Agreement N&W employees were subject to two different sets of merger-protective provisions, the applicable protection depending upon whether the adverse employment effect could be traced to the Virginian or the Nickel Plate merger. Therefore, a Memorandum of Understanding was executed, which provided, inter alia, that the arbitration provisions of the 1962 Agreement would be controlling.[5]

In September 1972 N&W proposed that the "road seniority rosters for engineers, firemen, conductors and brakemen on the Norfolk Division districts be merged and dovetailed appropriately according to seniority dates in order to effectuate a completely integrated operation". BLE opposed that proposal. Meetings were held in September and October 1972, with representatives of all of the operating employees in attendance. BLE negotiated independently with N&W. When they failed to reach an agreement, N&W, on October 17, 1972, served a demand and notice to establish an arbitration committee pursuant to the 1962 Agreement (see n. 4, above), and by letter dated October 26, 1972, called upon the National Mediation Board to appoint a neutral.

BLE contended that the matter was not arbitrable. It requested the National Mediation Board to deny N&W's application for the creation of a board and appointment of a neutral, arguing that the dispute does not involve the mere interpretation and application of a collective bargaining agreement, but "a question of law, which an arbitrator lacks the power to decide". N&W responded, challenging BLE's objections. On February 2, 1973, the National Mediation

4. The 1962 Agreement provided:

"1(b) In consideration of the foregoing employee benefits, Norfolk and Western and the other carriers heretofore named shall be entitled to transfer the work of the employees protected hereunder throughout the merged or consolidated system and the labor organizations will enter into implementing agreements providing for the transfer of employees to follow their work, and the employees, their organizations and the carriers will cooperate to that end.

* * *

"1(d) In the event any dispute or controversy arises between Norfolk & Western and any labor organization signatory to this Agreement with respect to the interpretation or application of any provision of this Agreement or of the Washington Job Protection Agreement (except as defined in Section 11 thereof) or of any implementing agreement entered into between Norfolk & Western and individual organizations which are parties hereto pertaining to the said merger or related transactions, which cannot be settled by Norfok & Western and the labor organization or organizations involved within thirty days after the dispute arises, such dispute may be referred by either party to an arbitration committee for consideration and determination. Upon no-

tice in writing served by one party on the other of intent by that party to refer the dispute or controversy to an arbitration committee, each party shall, within ten days, select one member of the arbitration committee and the two members thus chosen shall endeavor to select a third member who shall serve as chairman, in which event the compensation and expenses of the chairman shall be borne equally by the parties to the proceeding. All other expenses shall be borne by the party incurring them. Should the two members be unable to agree upon the appointment of the third member within ten days, either party may request the National Mediation Board to appoint the third member, whose compensation and expenses shall then be paid in accordance with existing law. The decision of the majority of the arbitration committee shall be final and binding."

5. "It is understood and agreed that the said agreement [1962 Nickle Plate Protective Agreement] does not diminish the rights and benefits of the employees subject to the Agreement of June 18, 1959, or implementing agreements made thereto in the Norfolk and Western-Virginian merger case except that said Agreement effective January 10, 1962, shall apply with respect to arbitration, retraining of employees and transfer of work."

Board created Special Board of Adjustment No. 813 and appointed a neutral member thereto. The Mediation Board noted BLE's objection and in its letter appointing the neutral stated: "This appointment is made without prejudice to the right of the Organization to argue such threshold issues as it deems appropriate in support of its position. . . Decisions involving disposition of this dispute are within the jurisdiction of the Special Board of Adjustment."

Board No. 813 convened, held a hearing on the question of its jurisdiction, and issued an interim award in April 1973, in which it concluded, inter alia, that the dispute was subject to final and binding arbitration upon failure of the parties to reach a negotiated settlement, and that the Board had jurisdiction over the dispute submitted to it. However, Board No. 813 also held that meaningful negotiation between the parties had not taken place and that the case should be remanded with directions that the parties exert their best efforts to reach a mutually acceptable agreement. After further negotiations, the parties remained deadlocked on two issues, and the Board was reconvened. After a further hearing, the Board issued its opinion and award, in which it concluded that there should be a consolidation of seniority rosters for engineers for road districts east of Roanoke.

Plaintiffs contended in the district court and before us that the issue of merger of seniority rosters was settled at the time of the 1959 Agreement and was never meant to be the subject of arbitration. The district court did not decide the issue of arbitrability because it concluded that the case should be dismissed for lack of federal jurisdiction.

## II

The history of the arbitration provisions of the Railway Labor Act has been reviewed by the Supreme Court on a number of occasions. See, e. g., Brotherhood of Railroad Trainmen v. Chicago R. & I. R. Co., 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622 (1957); International Association of Machinists v. Central Airlines, Inc., 372 U.S. 682, 83 S.Ct. 956, 10 L.Ed.2d 67 (1963); Andrews v. Louisville & Nashville R. Co., 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972).

In 1926 Congress called upon carriers or groups of carriers and their employees to reach agreements for the establishment of boards of adjustment to resolve so-called minor disputes.[6] The 1926 Act provided no sanctions for failure to reach such agreements and in many instances one or more of the parties refused. Moreover, the boards were to be composed of an equal number of employee and employer representatives and it was not uncommon to find boards, once established, unable to reach a majority decision. Many minor disputes went unresolved. Chicago R. & I. R., 353 U.S. at 35–36, 77 S.Ct. 635; Central Airlines, 372 U.S. at 688, 83 S.Ct. 956.

Therefore, in 1934, "[i]n the interest of industrial peace and of uninterrupted transportation service",[7] Congress amended the Railway Labor Act to create the National Railroad Adjustment Board, the divisions of which were to hear disputes referred to it by either party and "growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions."[8] See 45 U.S.C. § 153 First (i). The provisions of the 1934 Act dealing with the resolution of minor disputes by the National Railroad Adjustment Board "were to be considered as compulsory arbitration in this limited field". Chicago R. & I. R., 353 U.S. at 39, 77 S.Ct. at 640. Nevertheless, in § 3 Second of the 1934 Act, 45 U.S.C. § 153 Second, Congress authorized carriers or groups of carriers and their employees to agree to the establishment

---

6. 44 Stat. 577, 578–579, discussed in Chicago R. & I. R., 353 U.S. at 35–36, 77 S.Ct. 635. The definition of minor disputes covers the dispute involved in this case. See Central Airlines, 372 U.S. at 687, 83 S.Ct. 956.

7. H.R.Rep.No.1944, 73d Cong., 2d Sess. 3, quoted in 353 U.S. at 36, 77 S.Ct. at 638.

8. Act of June 21, 1934, c. 691, § 3, 48 Stat. 1189.

of system, group or regional boards of adjustment similar to those in the 1926 Act. In 1957 the Supreme Court observed that such boards "can have jurisdiction co-extensive with that of the National Board". 353 U.S. at 36, n. 13, 77 S.Ct. at 638. The 1934 Act also established the National Mediation Board as an independent agency, with various powers and duties, set out in 48 Stat. 1193, 1195, now codified with subsequent amendments as 45 U.S.C. §§ 154 and 155. Following adoption of the 1934 amendments the parties to railroad disputes made only limited use of the voluntary adjustment boards and the National Railroad Adjustment Board fell far behind in its work.[9]

Therefore, in 1966 Congress amended § 3 of the Act by adding a paragraph which is now the second paragraph in 45 U.S.C. § 153 Second. That amendment authorizes the establishment of special boards of adjustment, upon the written request of either the representatives of the carrier involved or of its employees, to resolve disputes otherwise referable to the National Railroad Adjustment Board and disputes pending before that Board for twelve months. Boards created pursuant to that provision of the 1966 amendment are generally designated "public law boards", to distinguish them from boards created pursuant to private agreement, authorized by the first paragraph of 45 U.S.C. § 153 Second, which are generally designated "special boards of adjustment".[10] The provision for the latter type of special boards was retained in the *Act* as amended in 1966.[11] Neutral members of "public law boards", like neutral members of "special boards of adjustment", are appointed by the National Mediation Board.[12]

### III

The provisions for enforcement and review of awards of the National Railroad Adjustment Board are set out in § 3 First (p) and (q) of the 1966 Act, 45 U.S.C. § 153 First (p) and (q).[13]

9. See S.Rep.No.1201, 89th Cong., 2d Sess., June 2, 1966, 2 U.S.Code Cong. & Admin. News, pp. 2285, 2286 (1966).

10. See Thirty-Eighth Annual Report of the National Mediation Board (1972), pp. 44, 45.

11. The first paragraph of 45 U.S.C. § 153 Second now provides:

"Nothing in this section shall be construed to prevent any individual carrier, system, or group of carriers and any class or classes of its or their employees, all acting through their representatives, selected in accordance with the provisions of this chapter, from mutually agreeing to the establishment of system, group, or regional boards of adjustment for the purpose of adjusting and deciding disputes of the character specified in this section. In the event that either party to such a system, group, or regional board of adjustment is dissatisfied with such arrangement, it may upon ninety days' notice to the other party elect to come under the jurisdiction of the Adjustment Board."

12. See Thirty-Eighth Annual Report of the National Mediation Board (1972), pp. 45, 46.

13. 45 U.S.C. § 153 First (p) provides in pertinent part:

"The district courts are empowered, under the rules of the court governing actions at law, to make such order and enter such judgment, by writ of mandamus or otherwise, as may be appropriate to enforce or set aside the order of the division of the Adjustment Board: *Provided, however,* That such order may not be set aside except for failure of the division to comply with the requirements of this chapter, for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order."

45 U.S.C. § 153 First (q) provides:

"(q) If any employee or group of employees, or any carrier, is aggrieved by the failure of any division of the Adjustment Board to make an award in a dispute referred to it, or is aggrieved by any of the terms of an award or by the failure of the division to include certain terms in such award, then such employee or group of employees or carrier may file in any United States district court in which a petition under paragraph (p) could be filed, a petition for review of the division's order. A copy of the petition shall be forthwith transmitted by the clerk of the court to the Adjustment Board. The Adjustment Board shall file in the court the record of the proceedings on which it based its action. The court shall have jurisdiction to affirm the order of the division or to set it aside, in whole or in part, or it may remand the proceeding to the division for such further action as it may direct. On such review, the

The last sentence of the second paragraph of § 3 Second of the Act, 45 U.S.C. § 153 Second, dealing with "public law boards" and their awards, states: "Compliance with such awards shall be enforcible by proceedings in the United States district courts in the same manner and subject to the same provisions that apply to proceedings for enforcement of compliance with awards of the [National Railroad] Adjustment Board". Several courts have considered the question whether awards of a "public law board" [14] may be reviewed at the suit of an aggrieved party. It has been generally held that they are subject to limited review similar to the review accorded awards of the several divisions of the National Railroad Adjustment Board. See Brotherhood of Locomotive Eng. v. Denver & Rio Grande W. R. Co., 411 F.2d 1115, 1119 (10 Cir. 1969); Transportation–Communication Employees Union v. St. Louis–San Francisco R. Co., 296 F.Supp. 507, 509 (E.D.Mo.1968); Baltimore & Annapolis R. Co. v. National Mediation Board, 321 F.Supp. 51, 55–56 (D.Md.1970); Brotherhood of Railway Carmen v. St. Louis–San Francisco R. Co., 334 F.Supp. 764 (W.D.Mo.1971).

The award with which we are dealing in the present case was issued by a "special board of adjustment" and not by a "public law board". Therefore, the provisions of § 3 Second of the 1966 Act, quoted above, do not apply directly to Special Board No. 813. However, as we noted in Part II, above, authority to create voluntary boards of adjustment has been an integral part of the policy of the Railway Labor Act since 1926; such authority was retained in 1934, when the National Railway Adjustment Board and the National Mediation Board were created; and again in 1966 when the pro-

visions for "public law boards" were added. Such voluntary boards of adjustment remain an authorized alternative method of carrying out the policy of the Railway Labor Act to expedite the disposition of unresolved minor disputes.

We conclude that the complaint filed in the district court in the case now before us presents a claim having its source in and arising under the Railway Labor Act, a law regulating commerce; it is therefore cognizable under 28 U.S.C. § 1337, and the district court had jurisdiction to determine whether Board No. 813 decided a matter which was not within the jurisdiction of that board.

In dismissing this action for want of federal jurisdiction, the district court relied heavily on Brotherhood of Railway, Airline and Steamship Clerks v. Special Board of Adjustment No. 605, 410 F.2d 520 (7 Cir. 1969), cert. den. 396 U.S. 887, 90 S.Ct. 177, 24 L.Ed.2d 162 (1969). With respect, we believe that the construction given the Railway Labor Act in that case was too restrictive.

Our conclusion is supported by International Association of Machinists v. Central Airlines, Inc., 372 U.S. 682, 83 S.Ct. 956, 10 L.Ed.2d 67 (1963); Kansas City Southern R. Co. v. Brotherhood of Railroad Trainmen, 305 F.Supp. 1142 (W.D.Mo.1969), and by the declared policy of the 1926 Act ". . . to settle all disputes, whether arising out of the application of . . . agreements or otherwise, in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof". § 2 First, 44 Stat. 577, 578,[15] quoted in Brotherhood of Railroad Trainmen v. Chicago R. & I. R. Co., 353 U.S. at 36, 77 S.Ct. at 638.[16]

findings and order of the division shall be conclusive on the parties, except that the order of the division may be set aside, in whole or in part, or remanded to the division, for failure of the division to comply with the requirements of this chapter, for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order. The judgment of

the court shall be subject to review as provided in sections 1291 and 1254 of Title 28."

14. I. e. a board created pursuant to the second paragraph of 45 U.S.C. § 153 Second. See last paragraph of Part II of this opinion.

15. See 45 U.S.C. § 151a.

16. It is in accord with the general federal labor policy articulated in United Steelwork-

In Machinists v. Central Airlines, supra, the Court said:

"While thus establishing a National Adjustment Board with power to make final awards with the help of neutral persons where necessary, Congress also provided in § 3, Second for voluntary system boards: . . .[17]

"This machinery was designed to serve the stated purposes of the Act which were, among others: 'To avoid any interruption to commerce or to the operation of any carrier engaged therein' and 'to provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions.' § 2, 45 U.S.C. § 151a. . . ." 372 U.S. at 688, 689, 83 S.Ct. at 960.

The Court held that a suit in a federal district court to enforce an award of an airline system board of adjustment, created by a contract between an airline and a labor union pursuant to § 204 of the Railway Labor Act, and whose decisions are final and binding upon the parties, has its source in and arises out of the Railway Labor Act and is governed by federal law. Therefore, (1) such a suit arises under a law of the United States, and a district court has jurisdiction under 28 U.S.C. § 1331, if the jurisdictional amount is satisfied; and (2) such a suit arises under a law regulating commerce, and a district court has jurisdiction under 28 U.S.C. § 1337, irrespective of the amount involved. 372 U.S. at 696, 83 S.Ct. 956.

The same reasoning applies in the instant case with respect to the claimed jurisdiction under 28 U.S.C. § 1337. As in the Central Airlines case, "we are not dealing with a suit involving an aspect of federal law which is only collateral or remote or a case where state and federal law are so blended as to present a serious question of the scope of the arising-under provision of § 1331 or § 1337".

ers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).

372 U.S. at 695, 696, 83 S.Ct. at 964. That such review be governed by federal law, as interpreted and applied by federal courts, accords with federal labor policy. "The needs of the subject matter manifestly call for uniformity." 372 U.S. at 691, 692, 83 S.Ct. at 962.

The judgment will be vacated and the case remanded to the district court for the limited purpose of deciding whether Board No. 813 exceeded its jurisdiction in making the award under attack in this case.

Vacated and remanded.

17. The Court then quoted in full the first paragraph of 45 U.S.C. § 153 Second, which is set out in n. 11, supra.