Anne C. CROOKHAM, etc., et. al., Plaintiffs,

v.

CONSOLIDATED RAIL CORPORATION, Defendant.

No. C77-1030.

United States District Court, N. D. Ohio, E. D.

Jan. 25, 1978.

Paul Mancino, Jr., Mancino, Mancino & Mancino, Cleveland, Ohio, for plaintiff.

Thomas R. Skulina, Reimer, Oberdank & Skulina, Cleveland, Ohio, for defendant.

## MEMORANDUM OF OPINION

MANOS, District Judge.

The plaintiff has brought this action under the court's diversity jurisdiction, 28 U.S.C. § 1332 (1970), and seeks the enforcement of certain employee protection provisions of Title V of the Regional Rail Reorganization Act of 1973 (RRRA), 45 U.S.C. §§ 771–779 (Supp. V 1975). The defendant maintains that employee claims under Title V of the RRRA can only be heard by the National Railroad Adjustment Board, and it has therefore moved for summary judgment on the ground the court lacks subject matter jurisdiction.

### I.

The RRRA consolidated the assets of seven insolvent railroads in the midwestern and northeastern United States and created the Consolidated Rail Corporation (Conrail), the defendant in this action. Congress intended that Conrail would provide "a rail service system in the midwest and northeast regions which is adquate to meet the needs and service requirements of this region and of the national rail transportation system . . . ." 45 U.S.C. § 701(b) (Supp. V 1975). Title V of the RRRA contains provisions designed to protect railroad employees who are adversely affected because of the reorganization of the railroads under Conrail. 45 U.S.C. §§ 771–779 (Supp. V 1975).

The plaintiff is the executrix of her late husband's estate. In her complaint she alleges that her husband worked for the Erie-Lackawanna Railway Company for over 30 years and that he began working for Conrail when the Erie-Lackawanna Railway Company was consolidated into Conrail in 1976. She claims that an illness forced her husband to take a leave of ab-

sence from work in April, 1977 and that Conrail abolished his job while he was absent. It is the plaintiff's contention that Conrail should have paid her husband the separation allowance that Title V of the RRRA provides for protected employees.

Separation allowance.—A protected employee who is tendered and accepts an offer by the Corporation to resign and sever his employment relationship in consideration of payment to him of a separation allowance, and any protected employee whose employment relationship is severed in accordance with subsection (d) of this section, shall be entitled to receive a lump-sum separation allowance not to exceed $20,000 in lieu of all other benefits provided by this subchapter. . . .

45 U.S.C. § 775(e) (Supp. V 1975). She further maintains that the jurisdiction of this court has been properly invoked because the following section of Title V gives her the option of bringing her husband's claim before either the National Railroad Adjustment Board or a federal district court:

Arbitration

Any dispute or controversy with respect to the interpretation, application, or enforcement of the provisions of this subchapter [Title V] . . . *may* be submitted by either party to an Adjustment Board for a final and binding decision thereon as provided in section 153 Second of this title, in which event the burden of proof on all issues so presented shall be upon the Corporation or, where applicable, the Association.

45 U.S.C. § 777 (Supp. V 1975) (emphasis added).

Conrail maintains that section 777 mandates that all Title V disputes must be submitted to the National Railroad Adjustment Board. It bases its argument upon section 777's reference to section 153 Second of the Railway Labor Act (RLA), 45 U.S.C. §§ 151 *et seq.* (1970), which has long been held to require compulsory arbitration of "minor" disputes under the RLA, and urges that Congress' use of the term "may" should not be interpreted as a grant of federal jurisdiction over Title V disputes.

## II.

The legislative history of the RRRA reveals that Congress did not intend for Title V disputes to be brought in federal district courts. Both the Senate and the Conference Committee's report on the RRRA indicate that Title V disputes should be submitted to arbitration. S.Rep.No. 93–601, 93d Cong., 1st Sess. ___, *reprinted in* [1973] U.S.Code Cong. & Admin.News, pp. 3242, 3288; Conf.R.No. 93–744, 93d Cong., 1st Sess. ___, *reprinted in* [1973] U.S.Code Cong. & Admin.News, pp. 3306, 3336. Furthermore, there is a significant Supreme Court decision on the interpretation of the RLA that undermines the plaintiff's interpretation of section 777 of the RRRA.

In *Slocum v. Delaware, Lackawanna & Western Railroad*, 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795 (1950) the Court held that the National Railroad Adjustment Board had exclusive jurisdiction over a dispute between two unions that concerned the scope of their respective bargaining agreements with the Delaware, Lackawanna & Western Railroad Company. The Court held that neither state nor federal courts had jurisdiction over disputes involving railroad bargaining agreements even when the National Railway Adjustment Board had not acted. *Id.* at 240–241, 70 S.Ct. at 577–578. In so holding, the *Slocum* Court indicated that the following section of the RLA gave the National Railroad Adjustment Board its exclusive jurisdiction over such disputes:

The disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions . . . shall be handled in the usual manner . . . but, failing to reach an adjustment in this manner, the disputes *may* be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board . . . .

45 U.S.C. § 153 First (i) (1970) (emphasis added). 339 U.S. at 240–241, 70 S.Ct. at

577–578; *see also Andrews v. Louisville & Nashville Railroad,* 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972). The Court gave its reasoning as follows:

> [I]n 1934 Congress, with the support of both unions and railroads . . . created a national Adjustment Board composed of representatives of railroads and unions. 48 Stat. 1189–1193. The Act thus represents a considered effort on the part of Congress to provide effective and desirable administrative remedies for adjustment of railroad-employee disputes growing out of the interpretation of existing agreements. The Adjustment Board is well equipped to exercise its congressionally imposed functions. Its members understand railroad problems and speak the railroad jargon. Long and varied experiences have added to the Board's initial qualifications. Precedents established by it, while not necessarily binding, provide opportunities for a desirable degree of uniformity in the interpretation of agreements throughout the nation's railway systems.
>
> The paramount importance of having these chosen representatives of railroads and unions adjust grievances and disputes was emphasized by our opinion in *Order of Conductors v. Pitney,* [326 U.S. 561, 66 S.Ct. 322, 90 L.Ed. 318] supra. There we held, in a case remarkably similar to the one before us now, that the Federal District Court in its equitable discretion should have refused "to adjudicate a jurisdictional dispute involving the railroad and two employee accredited bargaining agents * * *." Our ground for this holding was that the court "should not have interpreted the contracts * * *" but should have left this question for determination by the Adjustment Board, a congressionally designed agency peculiarly competent in this field. 326 U.S. at pages 567–568, 66 S.Ct. at page 325, 90 L.Ed. 318. This reasoning equally supports a denial of power in any court— state as well as federal—to invade the jurisdiction conferred on the Adjustment Board by the Railway Labor Act.

339 U.S. at 243–244, 70 S.Ct. at 579–580 (footnotes omitted).

While the action before this court is not based upon the RLA and does not directly involve a collective bargaining agreement, the *Slocum* decision is instructive of how to interpret section 777 of the RRRA. First, the *Slocum* Court's holding undermines the plaintiff's argument that the use of "may" in section 777 suggests that a Title V dispute can be brought in federal district court. In *Slocum* the Court implicitly rejected such an interpretation of section 153 First (i) of the RLA, a section whose language parallels that of section 777.

Second, the Court's opinion in *Slocum* stressed the fact that the National Railroad Adjustment Board is an established body whose specially selected members are uniquely equipped to understand railroad problems. The Supreme Court's decision that federal courts should not supplant the judgment of this peculiarly competent agency in RLA disputes is persuasive authority for this court not to substitute its judgment for that of this agency in disputes arising under Title V of the RRRA.

Based upon the legislative history of the RRRA and the strong inferences this court draws from the Supreme Court's decision in *Slocum,* the court holds that disputes arising under Title V of the RRRA are within the exclusive purview of the National Railroad Adjustment Board. *Accord, Consolidated Rail Corp. v. Railroad Yardmasters of America,* No. 76–2195 (E.D.Pa. August 13, 1976). The court therefore grants Conrail's motion for summary judgment on the ground this court lacks subject matter jurisdiction.

IT IS SO ORDERED.