# CONSOLIDATED RAIL CORPORATION

v.

# AMERICAN TRAIN DISPATCHERS ASSOCIATION.

### Civ. A. No. 81–2039.

United States District Court,
E. D. Pennsylvania.

Oct. 15, 1982.

---

Hermon M. Wells, Philadelphia, Pa., for plaintiff.

Edward J. Hickey, Jr., Thomas A. Woodley & Richard Hirn, Mulholland & Hickey, Washington, D.C., Stephen Richman, Markowitz & Richman, Philadelphia, Pa., for defendant.

## MEMORANDUM

GILES, District Judge.

Consolidated Rail Corporation (Conrail) and the American Train Dispatchers Association (ATDA), come before the court on cross motions for summary judgment. For the reasons set forth below, Conrail's motion for summary judgment is granted and ATDA's motion is denied.

ATDA entered into a collective bargaining agreement with Conrail's predecessor, the Pennsylvania Railroad. Conrail, a product of the Regional Railway Reorganization Act of 1973, 45 U.S.C. §§ 701, 741 (1976) (RRR Act), was required to assume all of the obligations under that collective bargaining agreement. 45 U.S.C. § 774. In 1977, Conrail consolidated and rearranged certain train dispatching districts. Some of its offices were closed and employees were transferred. Conrail advised ATDA that its actions were taken pursuant to section 503 of the RRR Act which provides that "the corporation [Conrail] shall have the right to assign, allocate, reassign, reallocate and consolidate work properly performed on the rail properties acquired pursuant to the provisions of this Act ...." 45 U.S.C. § 773. However, Conrail admits that the reorganization was effectuated without the thirty (30) day notice to ATDA required under the collective bargaining agreement. Nor was a written agreement reached between the parties with regard to the seniority of the affected employees, also a requirement of the agreement. In response to Conrail's actions, ATDA submitted a claim to the National Railroad Adjustment Board (NRAB) on behalf of three dispatchers adversely affected by the rearrangement of territories. When NRAB reached a deadlock in the three cases, two were assigned to one neutral referee and the third was assigned to another referee. The first referee found Conrail in violation of the collective bargaining agreement and entered an award for the aggrieved dispatchers. However, the other referee ruled that the NRAB had no jurisdiction over the matter, pointing to the fact that the parties had established Special Adjustment Board 880 to resolve disputes under the RRR Act. ATDA appeals from this latter decision while Conrail contests the two awards granted by the first referee, arguing that NRAB had no jurisdiction.

## DISCUSSION

The district court's review of NRAB's decisions is very narrow. An order may be set aside "for failure of the division [of NRAB] to ... conform or confine itself to matters within the scope of the division's jurisdiction ...." 45 U.S.C. § 153, First (1976). Thus, this court can determine if the NRAB has exceeded its jurisdiction. *Northwest Airlines v. ALPA*, 530 F.2d 1048, 1050, (D.C.Cir.1976) *cert. denied,* 426 U.S. 942, 96 S.Ct. 2663, 49 L.Ed.2d 394 (1976).

In determining whether the NRAB had jurisdiction the initial step is an analysis of the relevant statutory provisions. The NRAB was established in 1934 by Congress in section three, first of the Railway Labor Act, 45 U.S.C. § 153 (1976), to settle labor disputes arising out of collective bargaining agreements in the rail industry. Divided into divisions by category of employees, the NRAB has been held to have exclusive jurisdiction over the interpretation of agreements concerning rates of pay, rules and working conditions. *Slocum v. Delaware, Lackawanna & Western R.R.,* 339 U.S. 239, 244, 70 S.Ct. 577, 579, 94 L.Ed. 795 (1950); *Local 194 C & T United Transportation Union v. Consolidated Rail Corp.,* 672 F.2d 621, 625 (7th Cir. 1982); *Crookham v. Consolidated Rail Corp.,* 489 F.Supp. 1, 2–3 (N.D. Ohio 1978) *aff'd* 620 F.2d 301 (1980).

Over the years a tremendous number of disputes inundated NRAB. Thus, in 1966 Congress added a second part to section three, 45 U.S.C. § 153, in an endeavor to alleviate the backlog of pending cases. *See* [1966] U.S.Code Cong. & Ad.News 2285, 2285–2290. This second part gave parties the option to go before NRAB or to establish their own specialized adjustment boards. This section reads:

> Nothing in this section shall be construed to prevent any individual carrier, system, or group of carriers and any class or classes of its or their employees, all acting through their representatives, selected in accordance with the provisions of this chapter, from mutually agreeing to the establishment of system, group, or regional boards of adjustment for the purpose of adjusting and deciding disputes of the character specified in this section. In the event that either party to such a system, group, or regional board of adjustment is dissatisfied with such arrangement, it may upon ninety days' notice to the other party elect to come under the jurisdiction of the Adjustment Board.

45 U.S.C. § 153. Those courts to address the issue have held that NRAB's jurisdiction is "co-existent" with that of the specialized adjustment boards established under section three, second. *See Baltimore and Annapolis R. Co. v. National Mediation Bd.,* 321 F.Supp. 51, 57 (D.Md.1970); *Chicago, Rock Island and Pacific Railway Co. v. National Mediation Bd.,* 307 F.Supp. 417, 420 (N.D.Ill.1969), *aff'd* 435 F.2d 339, (1970), *cert. denied,* 402 U.S. 944, 91 S.Ct. 1621, 29 L.Ed.2d 113 (1971); *Brotherhood of Locomotive Engineers v. Denver & Rio Grande Western R.R. Co.,* 290 F.Supp. 612, 620 (D.Col.1968), *aff'd* 411 F.2d 1115 (10th Cir. 1969). The court in *Chicago, Rock Island & Pacific Ry. Co.,* noted: "[i]t is difficult to avoid the conclusion that Congress established two separate procedural devices for dealing with the identical subject matter. Certainly, the subject matter jurisdiction of the special board is co-extensive with that of the Adjustment Board." 307 F.Supp. at 420.

In an effort to save the already declining rail industry, Congress enacted the Regional Rail Reorganization Act of 1973, referred to above. Title V of the Act, sections 501–09, 45 U.S.C. § 771–80[1] covers employee protection. Section 507 of this Act, 45 U.S.C. § 777, is patterned after the second part of section three of the Railway Labor Act, quoted above, which also allows the parties to establish special adjustment boards to decide disputes arising under the Act. It was pursuant to this section that Conrail and ATDA established Special Adjustment Board 880. Section 507 provides:

> Any dispute or controversy with respect to the interpretation, application, or enforcement of the provisions of this title . . . [with certain exceptions not relevant here] which have not been resolved within 90 days, may be submitted by either party to an Adjustment Board for a final and binding decision thereon *as provided in* section 3 Second, of the Railway Labor Act [45 USCS § 153], in which event the burden of proof on all issues so presented

1. 45 U.S.C. §§ 771–80 were repealed and substantially reenacted on August 13, 1981, Pub.L. No. 97–35, 95 Stat. 661, now 45 U.S.C. §§ 797–797m. However, this case arose under and is governed by the old section.

shall be upon the Corporation or, where applicable, the Association.

45 U.S.C. § 777. The language of this section is instructive. From the reference to section 3 second, it is apparent that the jurisdiction of a section 507 special board is the same as a board established under section 3, second. Since the case law indicates that the jurisdiction of a section 3, second special board is "co-existent" with that of NRAB, the conclusion follows that parties to a labor dispute arising under the RRR Act have a choice between NRAB and Special Boards established under section 507.

The use of the word "may" in section 507 buttresses the conclusion that jurisdiction is not exclusively held by Special Board 880. The establishment of special boards is permissive; if none is established, NRAB would have exclusive jurisdiction.

Conrail argues, in essence, that the RRR Act superceded the Railway Labor Act by depriving the NRAB of jurisdiction over RRR Act cases. However, as ATDA correctly points out, repeals by implication are disfavored. *Universal Interpretive Shuttle Corp. v. Washington Metropolitan Area Transit Comm'n,* 393 U.S. 186, 193, 89 S.Ct. 354, 358, 21 L.Ed.2d 334 (1968); *FTC v. APW Paper Co., Inc.,* 328 U.S. 193, 202, 66 S.Ct. 932, 936, 90 L.Ed. 1165 (1946). There is no indication in the RRR Act in general or in section 507 in particular, that it was intended to supplant totally the NRAB's jurisdiction. Rather, it granted the parties the same freedom of choice in Title V disputes that they enjoy under the Railway Labor Act. Ironically, in *Crookham v. Consolidated Rail Corp.,* 489 F.Supp. 1 (N.D. Ohio 1978), Conrail itself argued that all Title V disputes must be submitted to NRAB, exactly the antithesis of their position here. 489 F.Supp. at 2. In *Crookham,* the court read section 507 as conferring jurisdiction on NRAB, ruling against the argument that the "may" language permits a federal court to take jurisdiction. *Id.* at 3.

Having concluded that there can be concurrent jurisdiction between NRAB and special boards under the RRR Act, it is necessary to look at the written agreement creating Special Board 880 to determine whether, in this instance, it was intended to have exclusive jurisdiction.

By its terms, the agreement limits the jurisdiction of Special Adjustment Board 880 to Title V disputes.[2] The purpose clause provides in relevant part: "it is the endeavor of the parties signatory hereto to maintain uniformity and consistency in connection with the arbitration procedures established pursuant to section 507 . . . ."

I conclude from the limited jurisdiction conferred upon the Special Board of Adjustment and the expressed purpose that the parties conferred exclusive and not concurrent jurisdiction. The goals of uniformity and consistency in dispute resolution would be ill served by having some Title V disputes heard before NRAB and others heard before Special Board 880. Additionally, Board 880 consists of only 5 members rather than the 34 members of NRAB. Thus, the potential for inconsistent resolutions depending upon the panel assembled is tremendously decreased before Board 880. Thus, I find the language of the agreement in this regard is clear, unequivocal and controlling on the issue of jurisdiction. Special Adjustment Board 880 was established for the sole purpose of resolving disputes under the RRR Act in a uniform manner. One party should not be permitted to ignore that agreement and later decide that NRAB is the preferred forum. Consistent with the specifically articulated goals, I conclude that the agreement of the parties conferred exclusive jurisdiction upon Board 880 to decide disputes arising under the RRR Act. As such, NRAB lacked jurisdiction to enter the awards below and they shall be vacated.

---

**2.** The agreement provides:

"The Board shall have jurisdiction *only* of disputes or controversies arising out of the interpretation, application or enforcement of the provisions of Title V of the Regional Rail Reorganization Act of 1973, as amended, as provided in Section 507."